Argued and submitted November 3, 1983, accused reprimanded July 3, 1984

# In re Complaint as to the Conduct of
# EUGENE FULOP,
*Accused.*

(No. 81-102, SC 29776)

685 P2d 414

Timothy P. Alexander, Myatt, Bell & Alexander, Beaverton, argued the cause and filed a brief for the Oregon State Bar.

Joe D. Bailey, Landis, Aebi & Bailey, P.C., Portland, argued the cause and filed a brief for the Accused.

Before Peterson, Chief Justice, and Lent, Linde, Campbell, Roberts and Carson, Justices.

## PER CURIAM

This is a disciplinary case. The Oregon State Bar's complaint contains four causes charging unethical conduct with respect to matters arising out of the accused's actions involving a real estate transaction. Cause I alleges that the accused violated DR 5-101(A) and DR 5-104(A) for having interests on both sides of the transaction.[1] Cause II alleges that the accused violated DR 1-102(A)(4) and DR 7-102(A)(7)[2] by offering to change a deed to show less consideration than actually paid in order to permit the grantors to avoid a capital gains tax. Cause III alleges that the accused violated DR 1-102(A)(4) and DR 7-102(A)(7) by asking the grantors to change the grantee in the deed resulting from the real estate transaction in order to help one of the grantees, the accused's friend, avoid a lien. Cause IV alleges that if the accused were now applying for admission to practice in this state, his application should be denied pursuant to ORS 9.480(1).[3]

---

[1] DR 5-101(A) states:

"Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests."

DR 5-104(A) states:

"A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure."

[2] DR 1-102(A)(4) states:

"(A) A lawyer shall not:

"* * * * *

"(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

DR 7-102(A)(7) states:

"(A) In his representation of a client, a lawyer shall not:

"* * * * *

"(7) Counsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent."

[3] ORS 9.480(1) was renumbered in 1981 and is now ORS 9.527(1), and states as follows:

The Trial Board found the accused guilty of the allegations contained in Cause II and not guilty of the allegations contained in Cause I. The Trial Board did not reach a conclusion as to the allegations of Cause III. As to Cause IV, the Trial Board found the accused to be guilty.

The Disciplinary Review Board disagreed with the Trial Board and found the accused guilty of violating DR 5-101(A) with respect to Cause I, not guilty with respect to Cause II, guilty with respect to Cause III, and not guilty with respect to Cause IV. A public reprimand and a requirement that the accused complete a course in legal ethics were recommended by the Disciplinary Review Board as appropriate sanctions.

The accused asks this court to hold that he did not act unethically in the transaction in question and to dismiss the charges. As we stated in *In re Chambers,* 292 Or 670, 672, 642 P2d 286 (1982):

> "It is this court's obligation to make an independent review of the evidence. The accused is entitled to the presumption that he is innocent of the charges made against him. The charges must be proved by clear and convincing evidence. *In re Galton,* 289 Or 565, 578, 615 P2d 317 (1980). 'Clear and convincing evidence means that the truth of the facts asserted is highly probable.' *Supove et al, v. Densmoor et ux,* 225 Or 365-372, 358 P2d 510 (1961)."

Upon our independent review of the evidence, we find the facts to be as follows:

The accused, Eugene Fulop, was approximately 60 years old and had been in practice for about 30 years at the time of these proceedings. He is well versed in bankruptcy, insolvency matters and real estate transactions. The transaction out of which the charges against the accused arose is related to the bankruptcy of Mr. and Mrs. Habig. The Habigs retained an associate of the accused's firm to represent them in bankruptcy proceedings. They owned a home which they

---

"The Supreme Court may disbar, suspend or reprimand a member of the bar whenever, upon proper proceedings for that purpose, it appears to the court that:

"(1) The member has committed an act or carried on a course of conduct of such nature that, if the member were applying for admission to the bar, the application should be denied; * * *."

ORS 9.480(1) was substantially the same provision.

had encumbered with first and second mortgages. They were in arrears on both mortgages.

The associate introduced the Habigs to the accused for the purpose of seeking advice on the disposition of their home. The accused stated to the Habigs that he thought a sale of the home was possible. The accused arranged for the sale of the house to his close friend, a Mr. Jones. The Habigs were informed by the accused that he was a "silent partner" of Mr. Jones in some business ventures. The Habigs did not object. It appears from the record that no partnership ever existed and that the inaccurate disclosure to the Habigs was made in view of a prospective partnership that never came to pass between the accused and Jones. The accused acquired no interest in the Habigs' home as a result of the sale. He received no consideration from Jones for the sale.

At a meeting attended by the accused and his wife (who is a real estate broker), the Habigs, and Mr. and Mrs. Jones, the accused prepared an earnest money agreement which the Habigs signed. It stated a price of $48,000. Under the terms of the earnest money agreement the Habigs were allowed to live in the house for a little less than three months without paying any rent. Mr. and Mrs. Jones were to pay the past due and future mortgage payments and pay the Habigs $500. The accused also prepared a deed from the Habigs to the Jones', which was signed about one month later and delivered to the grantees. It stated that the consideration for the conveyance was $48,000.

The accused acted as the Habigs' representative in the sale transaction; however, he failed to inform them that they would remain liable on the underlying mortgages unless they were formally assumed by the purchasers. Neither were the Habigs informed that the sales transaction might result in a capital gains tax if the amount of debt relief that occurred through the assumption of the mortgages exceeded their basis in the house. The Habigs were inexperienced in real estate matters.

In the course of having their income tax return prepared, the Habigs were informed that they owed a capital gains tax on their home.

We now review some conflicts in the evidence. Mr. Habig testified that he telephoned the accused to inform him of the tax liability and that the accused suggested that the deed could be rewritten to show a lower amount of consideration. Mr. Habig further testified that he had not considered changing the deed until the accused suggested it, and that he and his wife decided against it.

The accused testified that Mr. Habig suggested changing the deed to show less consideration. The accused stated that his response to the suggestion was noncommittal. He replied that he would look into the possibility of altering the amount of consideration recited in the deed, and he thereafter let the matter drop.

The deed was not altered.

We further find the following as fact. Approximately one year after the sale, Mr. Jones contacted the accused for the purpose of having the accused persuade the Habigs to execute a new deed showing only Mrs. Jones as the grantee. The first deed had not yet been recorded and the accused knew this. The accused also knew that the reason that the deed had not been recorded and the reason that Jones sought a new deed was that Mr. Jones was trying to avoid imposition of a lien on the property by the State Accident Insurance Fund. SAIF sought to impose the lien in order to satisfy a claim for premiums allegedly owed by Mr. Jones. The accused agreed to contact the Habigs in order to set up an appointment for them to sign a new deed; however, no such appointment was ever made and no new deed was ever executed.

■ The Disciplinary Review Board found the accused guilty on Cause I of violating DR 5-101(A) because, in the words of the rule, he had a "personal" interest in the transaction by reason of his friendship with Mr. Jones. Whether the rule should be so interpreted, we shall not decide in this matter, for we do not perceive that the accused was given fair notice that he should defend against that interpretation. Both the Bar and the accused agreed that the cause was pleaded and tried on the theory that a "financial" interest of the accused, rather than a "personal" interest, was implicated. Both the Bar and the accused have taken the position that different evidence would have been adduced had either proceeded on

the basis that a "personal" interest of the accused was the basis of the charge.

We find the accused's guilt of the charge contained in Cause I has not been proven.

We turn to Cause II. The evidence on this issue is in conflict. Mr. Habig testified that the accused suggested redrafting the deed; the accused testified that Mr. Habig suggested it. Resolution of the question would thus depend on a credibility determination. The Trial Board found that Mr. Habig was the more credible witness; the Disciplinary Review Board found that the accused was the more credible witness. We are not convinced that either witness is more credible than the other. The Bar must show that it is highly probable that the accused engaged in the conduct upon which the violation is predicated. We are not convinced to that degree and therefore find that the accused's guilt of the allegations contained in Cause II has not been proven.

In Cause III the accused is charged with counseling or assisting his client in conduct that the accused knew to be illegal or fraudulent, which would be a violation of DR 7-102(A)(7). We are not sure whom the Bar believes to be the client who was counselled or assisted in connection with attempting to procure a new deed from the Habigs naming only Mrs. Jones as grantee. We find that Mr. Jones had an attorney to whom he turned from time to time for legal services and advice in connection with his affairs. There is no evidence of any fee arrangement ever between the accused and Mr. Jones, although from time to time in the course of their personal relationship Mr. Jones did put questions to the accused, and the accused gave answers that might be considered legal advice, but this is the kind of advice that almost every lawyer renders occasionally to personal friends and relatives with no thought by either that a lawyer-client relationship occurs.

If it is the Bar's theory that the Habigs were the clients for the purpose of the charge predicated on DR 7-102(A)(7), we are faced with Mr. Habig's denial that the accused ever communicated with the Habigs about such a change of deed. If that is so, the accused could hardly have counselled or assisted the Habigs.

■      We conclude that the accused did not counsel or assist the Habigs in illegal or fraudulent conduct. We find that there was not a lawyer-client relationship between the accused and Mr. Jones and, therefore, the text of the rule is not applicable to any efforts on the part of the accused to assist Mr. Jones in this conduct. The accused did not violate DR 7-102(A)(7).

■      We turn to the charge that the accused in seeking this change in the deed violated DR 1-102(A)(4) by engaging in "conduct involving dishonesty, fraud, deceit, or misrepresentation." Applicability of that rule does not depend upon a lawyer-client relationship. The accused wrote a letter to the Bar while these matters were being investigated, stating in part:

> "Mr. Jerry Jones * * * informed me that State Accident Insurance Fund had filed a lien against him and that the deed we prepared was in the name of both he and his wife, and that if he filed it the lien would be against this property, and therefore the deed had never been recorded. He requested that I prepare a new deed and have the Habigs execute this just to his wife. I contacted Mr. Habig and attempted to set up an appointment for them to sign the new deed. However, on three separate occasions Mr. Habig was unavailable to execute the new deed."

Quite simply put, Mr. Jones asked the accused to assist Jones in rearranging the evidence of the ownership of the realty in order to deceive Mr. Jones' creditor and to misrepresent the true state of ownership of the property. Title in both grantees had vested with execution and delivery of the original deed. The Habigs had nothing left to convey; a deed from them to Mrs. Jones alone would not have changed the fact that both grantees under the original deed were owners from the time of execution and delivery of that deed. Signing and delivery of a new deed to Mrs. Jones alone would do no more than to assist Mr. Jones in defrauding a creditor.

     In light of Mr. Habig's denial that he received any request from the accused to execute a new deed, the accused argues that even if he discussed the matter with Mr. Jones, the accused engaged in no "conduct" that would constitute violation of the rule. As he points out, lawyers are often engaged in conversations with clients about dishonest, deceitful or

fraudulent conduct, if only for the purpose of advising a client of the wrongfulness of proposed conduct.

■ We can fully accept Mr. Habig's denial of a request to execute a new deed and still find a violation of DR 1-102(A)(4). By his own words, the accused admits *his conduct* in attempting to assist Mr. Jones in his deceitful and fraudulent conduct by even trying to reach the Habigs for the purpose of obtaining the false evidence Mr. Jones desired.

We find the accused guilty of violation of DR 1-102(A)(4) as charged in Cause III.

The charge in Cause IV, fairly read, is a charge of conduct that, if taken in the aggregate, would cause this court to deny his admission to the practice of law were he now applying. We have found him guilty on only one part of one of the causes charged in the Bar's complaint. Although the question may be close, we do not believe that Cause IV is made out and, therefore, find the accused not guilty under that cause.

■ The accused has been in practice for some 30 years without being cited for a violation of the disciplinary rules. We view the violation of which he has been found guilty today as an isolated instance of misbehavior. In these circumstances, a public reprimand is a sufficient sanction. This opinion will serve as a public reprimand.

The Oregon State Bar is awarded its actual and necessary costs and disbursements. ORS 9.536(4).