Argued and submitted May 7, accused is reprimanded October 7, 1999

# In re Complaint as to the Conduct of

## THOMAS C. HOWSER,
*Accused.*

## (OSB 95-252; SC S37691)

987 P2d 496

Michael Jewett, of Jacobson, Jewett, Thierolf & Dickey, Medford, argued the cause and filed the briefs for the accused.

Lia Saroyan, Assistant Disciplinary Counsel, Oregon State Bar, Lake Oswego, argued the cause and filed the brief for the Oregon State Bar.

PER CURIAM

## PER CURIAM

In this lawyer disciplinary proceeding, the Oregon State Bar (Bar) charged the accused in one cause of complaint with violating Code of Professional Responsibility Rules (DRs) 5-105(C) (former client conflict) and 2-110(B)(2) (failing promptly to withdraw from representation after learning of conflict). A trial panel of the Disciplinary Board found that the accused had violated both rules and determined that he should receive a public reprimand. The accused sought review. ORS 9.536(1); Rules of Procedure (BRs) 10.1 and 10.3. Our review is *de novo*. ORS 9.536(3); BR 10.6. On that review, we find that the accused violated both rules and impose a public reprimand.

Although most of the pertinent facts are not in dispute, their legal consequences are. We find the following facts by clear and convincing evidence.

The accused, a long-time member of the Bar, was a partner of Glenn H. Munsell in a law firm in Ashland. In October 1989 and again in April 1993, Munsell prepared wills for Betty Cassidy. In the 1989 will, Cassidy bequeathed an interest in a restaurant known as *Loli's* to Delores Foshee. In the 1993 will, Cassidy bequeathed nothing to Foshee but left a ring and $2,000 to Foshee's son, John King. Copies of both the Cassidy wills were kept in the accused's office, and a record of the wills was made in a will index card file. At that time, the will index card file was not incorporated into the firm's general conflict index file.

In February 1993, King sued his mother, Foshee. The accused represented Foshee. In April 1994, Cassidy, who was represented at that time by lawyer Matthew Sutton, sued Foshee, alleging that Foshee had defaulted on a $60,000 loan. The accused also represented Foshee in that case. In the course of the Cassidy/Foshee litigation, the accused filed a third-party complaint against King. That complaint alleged that the loan actually was to be used for King's benefit and that King and Cassidy were conspiring to force Foshee to pay a debt actually owed by King.

At the time when he filed the third-party complaint against King, the accused did not actually know that Munsell

had prepared the two wills for Cassidy.[1] Sutton brought that fact to the accused's attention in a December 14, 1994, letter that asked the accused to withdraw from his representation of Foshee. Sutton's letter specifically advised the accused that Cassidy did not consent to the accused's representation of Foshee and that Cassidy felt that she had revealed confidential information to Munsell that would be relevant to the ongoing litigation and would be harmful to her interests. The accused did not withdraw from the case, but he did advise Sutton that he would review the matter. The accused then discussed the matter with Munsell and reviewed the copies of the two Cassidy wills that were maintained in his office.

To preserve the *status quo*, the parties to the litigation entered into a stipulation and order for continuance of the case. The accused then sought advice from the Oregon State Bar concerning whether a conflict existed. The Bar's response, from an Assistant General Counsel, did not purport to be a formal ruling on the accused's question, but it did state that the accused's continuing representation of Foshee could violate DR 5-105(C) in two different ways.

After he received the Bar's comments, the accused continued to represent Foshee. The accused sought an additional continuance of the trial of the Cassidy/Foshee litigation. The accused finally withdrew as Foshee's counsel on August 27, 1996—over a year and a half after the alleged conflict first was called to his attention. The precise disposition of the litigation is unclear, but it is clear that Foshee ultimately filed for bankruptcy and that no one gained anything directly from the litigation.

In addition to the foregoing facts, testimony by Cassidy and the accused at the hearing before the trial panel was important to the case. Cassidy testified that she had loaned approximately $61,000 to Foshee and that approximately $10,000 had been repaid. She further testified that, in her 1989 will, she had left her entire interest in *Loli's* to Foshee. She removed Foshee as a beneficiary in her 1993

---

[1] However, DR 5-105(B) provides:

"For purposes of determining a lawyer's knowledge of the existence of a conflict of interest, all facts which the lawyer knew, or by the exercise of reasonable care should have known, will be attributed to the lawyer."

will. Cassidy stated that she had not given permission to the accused or Munsell to discuss her will with anyone else and that she considered the contents of the wills to be personal and private.

The accused testified that he might not have used the wills as evidence of a conspiracy between Cassidy and King, because he believed that he had sufficient evidence from other sources to support his theory. With respect to the use that he could have made of the contents of the wills, the accused acknowledged that the wills contained "some evidence" to support the conspiracy theory that he had advanced in the third-party complaint that he had filed for Foshee. Asked to explain what he meant by "some evidence," the accused said: "Well, on their face, if you didn't know anything else, that would confirm the conspiracy theory, at least as far as the 1993 will." The accused further testified that, in his opinion, Cassidy had waived any claim of confidentiality by telling several people about the contents of the wills.

As noted, the Bar charged the accused with violating DR 5-105(C) and DR 2-110(B)(2). We begin by examining the charge that the accused violated DR 5-105(C), which provides:

> "Except as permitted by DR 5-105(D), a lawyer who has represented a client in a matter shall not subsequently represent another client in the same or a significantly related matter when the interests of the current and former clients are in actual or likely conflict."[2]

The rule defines "a significantly related matter" as one in which the subsequent representation "would, or would likely, inflict injury or damage upon the former client in the course of the subsequent matter" through the use of confidences or secrets obtained from the former client. DR 5-105(C)(2). A

---

[2] DR 5-105(D) provides:

"A lawyer may represent a client in instances otherwise prohibited by DR 5-105(C) when both the current client and the former client consent to the representation after full disclosure."

Consent is not involved in this case.

"confidence" is "information protected by the attorney-client privilege under applicable law,"[3] DR 4-101(A), and a "secret" is "other information gained in a * * * former professional relationship that the client has requested be held inviolate or the disclosure of which * * * would be likely to be detrimental to the client." *Id.*

■ ■ Three factors are required to establish a conflict under DR 5-105(C): (1) the accused lawyer had a lawyer-client relationship with the adverse party; (2) the present representation places the lawyer in a position adverse to the former client; and (3) the present matter is significantly related to a matter in which the lawyer represented the former client. *In re Brandsness*, 299 Or 420, 426-27, 702 P2d 1098 (1985). In this case, the accused disputes only the existence of the third factor, *viz.*, that there is a significant relationship between Munsell's representation of Cassidy and the accused's representation of Foshee and there is a possible detrimental effect on Cassidy from that latter representation of Foshee.

The accused first argues that the two wills were in fact beneficial, not detrimental, to Cassidy in her litigation with Foshee. He explains that, because Cassidy left King only $2,000 and a ring, the second will contradicted his theory that Cassidy and King were in collusion—a theory that was supported by other evidence that the accused says would show that Cassidy had planned to "leave everything" to King. Therefore, the accused asserts, his knowledge of Cassidy's wills could not have "inflict[ed] injury or damage" on Cassidy. The accused also argues that, because Cassidy had told others that she in fact had left her entire estate to King, she had waived any confidence concerning the content of her wills.

---

[3] Under OEC 503(1)(b), a confidential communication in the lawyer-client context is one

"not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication."

The Bar contends that Cassidy intended both wills to remain secret and that she never had given Munsell permission to disclose their contents. The Bar also points to Cassidy's testimony that, other than telling King that he would receive the ring, she never had revealed the contents of her will to anyone. Under the circumstances, in the Bar's view, the conversations between Cassidy and Munsell, together with the two wills, were confidences under DR 4-101(A) and OEC 503(1)(b). The Bar further contends that, by the accused's own admission, confidential information in Munsell's file provided him with documentary evidence of his theory of collusion between Cassidy and King and, therefore, would have benefitted Foshee to Cassidy's detriment. It follows, in the Bar's view, that the accused had an "information-specific, former client conflict" under DR 5-105(C) that obligated him to withdraw as Foshee's lawyer.

The Bar's argument is well taken. In *Brandsness*, this court explained:

> "[T]he principle embodied in the concept of 'significantly related' matters [in DR 5-105] consists of two sub-tests:
>
> "*a. Matter Specific.*
>
> "Representation of the present client in the subsequent matter would, or would likely, inflict injury or damage upon the former client in any matter in which the lawyer previously represented the former client; or
>
> "*b. Information Specific.*
>
> "Representation of the former client provided the lawyer with confidential information the use of which would, or would likely, inflict injury or damage upon the former client in the subsequent matter."

299 Or at 430-31.

This proceeding involves an "information-specific" conflict. Even the accused acknowledged in his testimony at the hearing before the trial panel that information in the Cassidy wills supported his theory of a conspiracy between Cassidy and King. By definition, therefore, the accused was in a position to use information gained through representation of a former client and harmful to that former client to aid a present client. The accused violated DR 5-105(C).

The accused argues that Cassidy had waived any confidentiality interest in the contents of her wills by discussing their contents with others. Assuming that a waiver in that form could relieve a lawyer of the lawyer's obligations under DR 5-105(C), the evidence in this record on which the accused relies does not support his argument. It does appear to be true that the accused's client, Foshee, told the accused that she had heard Cassidy acknowledge on numerous occasions that King eventually would get "everything," but any such statements—and the record is very vague as to when the statements were made and what exactly the statements were—appear to have been general ones, not necessarily statements concerning the existence (or the contents) of Cassidy's wills. We are unpersuaded by that argument.

We turn to the question whether the accused violated DR 2-110(B), which provides, in part:

"(B)   Mandatory Withdrawal

"A lawyer representing a client before a tribunal, with its permission if required by its rules, shall withdraw from employment, and a lawyer representing a client in other matters shall withdraw from employment, if:

"* * * * *

"(2)   The lawyer knows or it is obvious that the lawyer's continued employment will result in violation of a Disciplinary Rule."

Here, the accused eventually did withdraw as Foshee's counsel, but he did not do so until August 1996, nearly a year and a half after he had reviewed Cassidy's two wills. The accused asserts that his legal duty to Foshee precluded his withdrawal until he could be satisfied that he indeed had a conflict and could ensure that Foshee obtained legal help that she required. *See* DR 2-110(A)(2) (lawyer shall not withdraw from representation until the lawyer has taken "reasonable steps to avoid foreseeable prejudice to the rights of the lawyer's client"). The Bar responds that the accused was required to withdraw in January 1995, when he learned the contents of Cassidy's wills and had been advised by Sutton that Cassidy did not consent to the accused's continued representation of Foshee.

We need not decide precisely when the accused became obligated to withdraw from representing Foshee because, whenever that point was reached, it was long before the accused finally withdrew. The accused appears to have been motivated in significant part by the fact that his client had no funds to retain other counsel, but the fact of the pressing financial needs of his present client cannot excuse the accused from observing his obligations to his former client which, by virtue of the rule, were primary in this context. The accused had to withdraw from his representation of Foshee within a reasonable time. He did not. We find that the accused violated DR 2-110(B).

We turn to the issue of the appropriate sanction. In assessing a sanction, this court utilizes the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991) (amended 1992) (ABA Standards). *In re Huffman*, 328 Or 567, 587, 983 P2d 534 (1999). Under those standards, the court considers (1) the duty violated; (2) the accused lawyer's mental state; and (3) the actual or potential injury caused by the accused's conduct. ABA Standard 3.0; *Huffman*, 328 Or at 587-88. The court also considers aggravating and mitigating circumstances, as well as Oregon case law in determining the appropriate sanction. *In re Martin*, 328 Or 177, 191, 970 P2d 638 (1998) (taking that approach).

We first consider the duty violated. We find that the accused violated his duty to Cassidy, his former client, to avoid conflicts of interest and his duty to the profession by failing timely to withdraw from his representation of Foshee.

We next consider the issue of the accused's mental state. The trial panel found that the accused acted negligently. We disagree. It is clear to us that the accused acted knowingly, *i.e.*, that he acted with a conscious awareness of the facts and the applicable rules. ABA Standards at 17. Indeed, the accused had contacted the Bar to clarify which rules, if any, applied. The accused characterizes the Bar's response as "equivocal" but, at the least, it pointed the accused directly to those disciplinary rules that bore on his situation and placed him in a position to evaluate for himself whether he was in jeopardy of violating them.

Turning to the question of the harm caused by the accused's conduct, we can say with certainty only that it

unnecessarily prolonged the Cassidy/Foshee litigation. We agree with the trial panel, however, that the record does not show that Cassidy lost anything of value as a result of that delay.

The ABA Standards provide that, absent aggravating or mitigating factors, a suspension is the appropriate sanction when a lawyer knows of a conflict of interest. ABA Standard 4.32. The commentary explains:

> "[S]uspension is appropriate when a lawyer knows or should know that the interests of a client are materially adverse to the interests of a former client in a substantially related matter, and causes injury or potential injury to the former or the subsequent client."

ABA Standards at 31. We turn to an examination of pertinent aggravating and mitigating factors.

Aggravating factors include the accused's substantial experience in the practice of law, ABA Standard 9.22(i), and his continued refusal—persisting even through the present proceeding—to acknowledge the wrongfulness of his conduct, ABA Standard 9.22(g). Mitigating circumstances include the accused's long and exemplary record of service to the Bar, ABA Standard 9.32(g); his lack of any other disciplinary record, ABA Standard 9.32(a), and the fact (which we find by clear and convincing evidence) that the accused acted without a selfish or dishonest motive, ABA Standard 9.32(b).

The mitigating factors outweigh the aggravating factors in this case. We previously have imposed a reprimand in factually similar cases. *See, e.g., In re Cohen*, 316 Or 657, 664, 853 P2d 286 (1993) (imposing reprimand in knowing conflict case when mitigating factors outweighed aggravating factors); *In re Trukositz*, 312 Or 621, 634, 825 P2d 1369 (1992) (imposing reprimand under facts which, although not labeled as such, necessarily involved knowing violation). We conclude that a public reprimand is the appropriate sanction.

The accused is reprimanded.