Argued and submitted November 7, 2003, accused publicly reprimanded
July 29, 2004

# In re Complaint as to the Conduct of

# JIM CARPENTER,
*Accused.*

## (OSB 02-32; SC S50321)

95 P3d 203

Ryan S. Joslin, Carpenter & Joslin, P.C., John Day, argued the cause and filed the brief for the accused.

Mary A. Cooper, Assistant Disciplinary Counsel, Lake Oswego, argued the cause for the Oregon State Bar. On the briefs was Stacy J. Hankin, Assistant Disciplinary Counsel.

PER CURIAM

Balmer, J., dissented and filed an opinion in which Kistler, J., joined.

## PER CURIAM

In this lawyer disciplinary proceeding, the Oregon State Bar (Bar) alleged that the accused violated Code of Professional Responsibility Disciplinary Rule (DR) 1-102(A)(3) (prohibiting dishonesty, fraud, deceit, and misrepresentation). The facts centered on a posting by the accused of a message on an Internet site in which he identified himself by the name of a teacher, who served as a local high school counselor and coach, and implied in that message that the teacher had engaged in sexual behavior with students. A trial panel of the Disciplinary Board concluded that the accused had not violated DR 1-102(A)(3) and dismissed the charge. The Bar sought review under ORS 9.536(1) and Bar Rules of Procedure (BR) 10.1 and 10.3.

We review a decision of the trial panel *de novo*. ORS 9.536(2); BR 10.6. The Bar has the burden of establishing the alleged conduct by clear and convincing evidence, which means "evidence establishing that the truth of the facts asserted is highly probable[.]" *In re Dugger*, 334 Or 602, 604, 54 P3d 595 (2002). Although we review *de novo*, we generally give weight to the trial panel's credibility findings. *Id.* For the reasons that follow, we conclude that the accused violated DR 1-102(A)(3) and impose the sanction of a public reprimand.

## I. FINDINGS OF FACT

The facts are undisputed. The accused became a member of the Oregon State Bar in October 2000. He has no prior record of discipline.

The alleged violation of the disciplinary rule at issue in this proceeding occurred in February 2001, when the accused accessed the Classmates.com website. That website allows subscribers to post information about themselves and to contact other subscribers. The website lists information by school, year of graduation, and the subscribers' names. The website limits the information that nonsubscribers can obtain.

Both the accused and the teacher had attended the same high school in the mid-1980s. The accused filled out an

online form on Classmates.com and set up an account in the name of the teacher. After registering the account in the teacher's name, the accused posted the following message:

> "Hey all! How is it going. I am married to an incredibly beautiful woman, AND I get to hang out with high school chicks all day (and some evenings too). I have even been lucky with a few. It just doesn't get better than this."

When the accused posted the message, the teacher was a counselor and coach at the same high school that the teacher and the accused had attended. The accused testified that he acted on a whim and had in mind only a practical joke when he posted the message. He also testified that he believed that the teacher's friends would read the message and think it was funny; however, he did not think that anyone would believe that the teacher posted the message himself because of its outlandish nature.

When he posted the message, the accused had heard that the teacher had engaged in an extramarital affair with a young woman who had been a student at the high school while the teacher was working there. School officials placed a window in the door of the teacher's counseling office around the same time that allegations about the affair arose. The police also commenced an investigation into the affair, but terminated it when the former student refused to disclose whether the affair had begun while she was still a student at the high school.

Other rumors circulated in the community that the teacher had engaged in affairs with one or more school-age girls. The accused testified that he had heard the rumors from persons whom he knew and respected in the community and that, based on those rumors, he believed that the representations in the message that he posted on the website were true.

Shortly thereafter, someone other than the accused sent a letter and a printed copy of the online message to the high school's principal, the school superintendent, and the members of the school board. That letter expressed disgust at the online message and demanded that the school officials

protect students from the teacher and hold him accountable for his actions.

Based on the letter, school officials initiated an inquiry into the teacher's conduct. The teacher denied posting the message and denied having sexual relationships with students. The principal and the superintendent indicated that the teacher should discover who had posted the message.

The teacher attempted to discover the author of the message through Classmates.com. However, because Classmates.com would not provide that information, he reported the matter to the Oregon State Police. The investigating police officer, Sergeant Larson, forwarded the matter to the district attorney's office, which issued a subpoena.

Based on information received from Classmates.com, Larson interviewed the accused on June 1. The accused admitted that he created the online account and posted the message. He told Larson that he posted the message "to be a thorn in [the teacher's] side" in the context of a joke. Larson forwarded the results of his investigation to the district attorney. However, the state brought no criminal charges against the accused. The teacher reported the results of the investigation to school officials, who then closed the inquiry and took no further action.

On June 5, the accused contacted the teacher, apologized for his conduct, and offered to help rectify the situation. Around the same time, the accused was running for election to the local district attorney position, and the local newspaper was publishing related articles. When the newspaper contacted the accused about the matter, the accused followed the teacher's request that he not respond. The accused also testified that he ceased campaigning for the office of district attorney to avoid further publicity.

The Bar filed a formal complaint against the accused in May 2002. In its complaint, the Bar alleged that the accused violated DR 1-102(A)(3) by setting up an account in the teacher's name, by posting a message purporting to be written by the teacher, and by suggesting in that message that the teacher had sexual relationships with high school

students. In his answer, the accused admitted to engaging in the alleged conduct, but denied that that conduct violated DR 1-102(A)(3). After a hearing, the trial panel dismissed the complaint against the accused, stating that "[t]he reach of DR 1-102(A)(3) does not extend to the kind of non-professional, unregulated conduct found in this case."

On review, the Bar requests that this court find that the accused violated DR 1-102(A)(3) and impose a 60-day suspension. In response, the accused asserts that his conduct did not violate DR 1-102(A)(3) and requests that, if this court does determine that a violation occurred, it should impose a sanction no greater than a public reprimand.

## II. ALLEGATION OF DISHONESTY

We first address whether the trial panel erred in dismissing the Bar's complaint on the basis of the trial panel's legal conclusion that that rule applies only to professional conduct or conduct that otherwise is subject to criminal or administrative sanctions.

DR 1-102(A)(3) provides:

"It is professional misconduct for a lawyer to:

"* * * * *

"(3) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]"

We begin by noting that the text of DR 1-102(A)(3) contains no requirement that, to violate that rule, the lawyer's conduct must be subject to criminal or administrative sanctions. Although the rule does refer to "professional misconduct," this court has held that the rule does not require that the lawyer be acting in his or her capacity as a lawyer. *In re Coe*, 302 Or 553, 565, 731 P2d 1028 (1987). This court has concluded that accused lawyers have violated DR 1-102(A)(3) even when their conduct did not involve the practice of law and may not have been subject to other regulation. *See In re Germundson*, 301 Or 656, 662, 724 P2d 793 (1986) (holding that lawyer's act of executing promissory note as representative of corporation when lawyer knew he had no

authority to act on behalf of that corporation violated DR 1-102(A)(3)); *In re Houchin*, 290 Or 433, 438, 622 P2d 723 (1981) (holding that lawyer's act of enrolling as student in course he was teaching for purpose of preventing reduction in governmental benefits when lawyer knew that he was not entitled to receive credit as student violated *former* DR 1-102(A)(4)).

■■ It is true, however, that the underlying purpose of lawyer discipline proceedings—the protection of the public—helps this court to determine when a lawyer's conduct constitutes professional misconduct within the meaning of the rule. In *In re Murdock*, 328 Or 18, 24-25, 968 P2d 1270 (1998), this court stated:

> "The purpose of lawyer discipline is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely to discharge properly their professional duties to clients, the public, the legal system, and the legal profession. American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991) (amended 1992) (ABA Standards), Standard 1.1; *see In re Stauffer*, 327 Or 44, 66, 956 P2d 967 (1998) (same).
>
> " 'Members of the public are entitled to be able to trust lawyers to protect their property, liberty, and their lives. The community expects lawyers to exhibit the highest standards of honesty and integrity, and lawyers have a duty not to engage in conduct involving dishonesty, fraud, or interference with the administration of justice.' ABA Standards at 5."

Guided by that purpose, this court examines lawyer conduct that occurs outside the scope of professional relationships, such as that of attorney and client, to determine whether the conduct jeopardizes the public's interest in the integrity and trustworthiness of lawyers. Not every lawyer misstatement poses that risk: telling the story of Santa Claus to children is an example. Instead, there must be a rational connection between the conduct that gives rise to an allegation of a rule violation and the purpose of the lawyer discipline system. That is, the accused lawyer's conduct must demonstrate that the lawyer lacks those characteristics that are essential to the practice of law.

■ In most situations involving business communications with clients, the courts, other lawyers, and governmental entities, when an accused lawyer engages in conduct involving dishonesty or misrepresentation that connection will be apparent. There are circumstances, however, when such a connection will not be apparent, because, although the lawyer's conduct involves the making of a false or dishonest statement, the conduct is so divorced from the realm of professional conduct that it does not necessarily speak to the lawyer's professional character. In those situations, it is necessary to identify the nexus between the lawyer's conduct and the lawyer's fitness to practice law to establish that the lawyer's conduct is of the type of conduct for which this court may call the lawyer to answer. If the evidence in a discipline case does not establish such a nexus, then the lawyer is not subject to professional discipline.

The trial panel, however, did not purport to enforce a qualification of that sort when it dismissed the complaint against the accused. Instead, it confined DR 1-102(A)(3) to a lawyer's professional conduct or conduct that violates criminal laws or administrative rules. As the foregoing discussion indicates, we have declined to read into the text of DR 1-102(A)(3) the limitations on which the trial panel relied here.

■ We turn now to whether the accused's conduct violated DR 1-102(A)(3). As this court previously has stated, it is this court's practice to consider only the theories that the Bar presents when analyzing an accused lawyer's conduct under DR 1-102(A)(3). *See, e.g., In re Kluge*, 335 Or 326, 340, 66 P3d 492 (2003) (considering Bar's allegation that accused violated DR 1-102(A)(3) only under theories presented in its brief). Accordingly, we confine our analysis of DR 1-102(A)(3) to the theories of misrepresentation and dishonesty that the Bar argued before the trial panel and in its brief to this court.

■ We first address whether the accused engaged in conduct involving misrepresentation. Under DR 1-102(A)(3), an affirmative misrepresentation is a knowing, false statement of material fact. *In re Kumley*, 335 Or 639, 644, 75 P3d 432 (2003). "When considering an assertion that a lawyer has engaged in affirmative misstatement, our initial focus is on the truth or falsity of the fact asserted." *Id.* at 644-45. Here,

the Bar alleged that the accused knowingly made affirmative false statements in the online message when he stated that the teacher had engaged in sexual conduct with students. However, at oral argument, the Bar conceded that it had not proved by clear and convincing evidence that the statements regarding sexual conduct with students in the online message were false. That concession is well taken, and we conclude that the accused did not engage in conduct involving misrepresentation.

We next address whether the accused engaged in conduct involving dishonesty. We analyze the conduct that allegedly constitutes dishonesty on a case-by-case basis. *In re Gallagher*, 332 Or 173, 181, 26 P3d 131 (2001). To engage in conduct involving dishonesty in violation of DR 1-102(A)(3), the accused must have acted with a mental state of knowledge or intent. *See In re Martin*, 328 Or 177, 185-86, 970 P2d 638 (1998) (stating that "[t]he term 'dishonesty' imports with it a notion of knowledge or intentionality" and reviewing prior case law suggesting knowledge or intent is required). Under DR 1-102(A)(3), conduct involving "[d]ishonesty is conduct that indicates a disposition to lie, cheat, or defraud; untrustworthiness; or a lack of integrity." *Dugger*, 334 Or at 609. The characteristics that this court's definition of dishonesty embraces are those that reflect on a lawyer's fitness to practice law. *In re Hockett*, 303 Or 150, 158, 734 P2d 877 (1987) ("Trustworthiness and integrity are key concepts in the Code of Professional Responsibility * * *."). Consequently, to violate DR 1-102(A)(3) by dishonesty, the lawyer's conduct must indicate that the lawyer lacks those characteristics of trustworthiness and integrity that are essential to the practice of law.

The Bar argues that the accused engaged in conduct involving dishonesty when he created a Classmates.com account in the teacher's name, posted a message purporting to be written by the teacher, and led others to believe that the teacher had posted the message. The Bar asserts that the court should treat the accused, who misrepresented his identity to disseminate information, the same as a lawyer who misrepresents his identity to obtain information. *See In re Gatti*, 330 Or 517, 8 P3d 966 (2000) (finding violation of DR 1-102(A)(3) when lawyer intentionally misrepresented his

identity and purpose to obtain information for use in litigation).

The accused responds that the Bar did not prove by clear and convincing evidence that he acted dishonestly because the Bar did not show that he intended to deceive, that is, that he intended to lead others to believe that the teacher had posted the message. The accused asserts that he believed, due to the outlandish nature of the message, that anyone reading the message would understand that the teacher had not authored the message and that it was a joke. The accused also argues that, to violate DR 1-102(A)(3), the alleged conduct must reflect adversely on the accused lawyer's fitness to practice law. The accused asserts that his conduct was so far removed from the practice of law that the court should infer no adverse reflection on his fitness to practice law.

We address each of the accused's assertions in turn. This court has held that intent to deceive is an element of conduct involving deceit or fraud under DR 1-102(A)(3). *In re Hiller*, 298 Or 526, 533, 694 P2d 540 (1985) ("A misrepresentation becomes fraud or deceit when it is intended to be acted upon without being discovered."). However, dishonesty is a broader concept than deceit or fraud, and does not require the same level of culpability. *See In re Leonard*, 308 Or 560, 569, 784 P2d 95 (1989) (stating that dishonesty is broader concept than deceit or fraud); *In re Holman*, 297 Or 36, 57, 682 P2d 243 (1984) ("The grouping of the noun 'dishonesty' with the other three nouns, 'fraud, deceit or misrepresentation,' might suggest that in order for conduct to involve dishonesty it must partake of some kind of deception in the sense of misleading the victim of the conduct. We do not so conclude."). As stated above, dishonesty requires a mental state of knowledge *or* intent. Thus, contrary to the accused's position, the Bar need not prove that the accused acted *intentionally* to demonstrate a violation of that rule; nor does the rule require the Bar to prove that the accused had a purpose to deceive others into believing that the teacher had authored the message. However, as we discuss in more detail below, we are satisfied that the accused acted intentionally in violating DR 1-102(A)(3) by dishonesty in this instance.

Regarding the accused's second argument, as we stated above, the accused lawyer's conduct must be connected rationally to the lawyer's fitness to practice law to constitute a violation of DR 1-102(A)(3) by dishonesty. However, we conclude that the accused's conduct does reflect adversely on his fitness to practice law.

The accused does not dispute that it was dishonest for him to assume the teacher's identity and post a message that purported to be written by the teacher and indicated that the teacher had engaged in sexual behavior with high school girls. When he acted, the accused had heard that the teacher had engaged in an extramarital affair with a young woman who had attended the high school while the teacher worked there. The accused also knew that there were rumors in the community about that affair and rumors that the teacher had engaged in inappropriate relationships with students. Thus, the accused knew that the teacher, whose reputation was in question in at least some parts of the community, was uniquely vulnerable to the content of the message, because it pretended to be an admission by the teacher that the community rumors about inappropriate conduct were true.

We conclude that, in so conducting himself, the accused engaged in conduct involving dishonesty, because that conduct indicates that the accused lacks aspects of trustworthiness and integrity that are relevant to the practice of law. By adopting the teacher's identity and posting the online message that he composed, the accused created a significant risk that his actions would affect the teacher's legal rights adversely. The message purported to be an admission by the teacher that he had engaged in socially and legally unacceptable behavior. The purported admission had the potential to harm the teacher's career and subject him to a criminal investigation. Also, the medium through which the accused chose to act increased the likelihood of that potential harm, because the Classmates.com website provided no contextual clues that the teacher was not the author of the message or that someone intended the message to be a joke. It is unreasonable, in our view, that the accused believed that anyone reading the message would view it only as a joke because of the nature of the message itself. The message was available

for viewing by a wide audience of unknown persons who would not know the teacher personally and who would be unaware of other circumstances outside the message itself that would indicate to them that someone intended the message as a joke and that they should view it in that manner. The accused's conduct demonstrates a willingness to disregard the teacher's legal rights. That willingness reflects adversely on the accused's fitness to practice law, because it causes us to question whether the accused possesses the requisite trustworthiness and integrity to handle important matters involving legal rights that clients commonly entrust to lawyers. We conclude that the accused violated DR 1-102(A)(3).

## III. SANCTION

Having concluded that the accused violated DR 1-102(A)(3), we now must determine the appropriate sanction. To do so, the court examines the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991) (amended 1992) (ABA Standards) and Oregon case law. *In re Huffman*, 331 Or 209, 223, 13 P3d 994 (2000). We first determine preliminarily the appropriate sanction by considering (1) the duty violated, (2) the accused's mental state, and (3) the actual or potential injury that the misconduct caused. ABA Standard 3.0. We then examine any aggravating or mitigating circumstances to determine whether we should adjust the preliminary sanction, and, finally, we review our prior case law for guidance in determining the appropriate sanction. *Huffman*, 331 Or at 223.

A. *Duty Violated*

By engaging in conduct involving dishonesty, the accused violated his duty to the public to maintain his personal integrity. ABA Standard 5.1.

B. *Mental State*

The ABA Standards provide that a lawyer acts with "intent" if it is the lawyer's "conscious objective or purpose to accomplish a particular result." ABA Standards at 7. A lawyer acts with "knowledge" if the lawyer acts with "the conscious awareness of the nature or attendant circumstances of

the conduct but without the conscious objective or purpose to accomplish a particular result." *Id.*

 The Bar asserts that the accused acted with "intent" because the accused told Sergeant Larson that he posted the message "to be a thorn in [the teacher's] side." The accused testified that he acted "minutes after it came to mind" without considering the potential effect of his actions. He also testified that, as he explained to Larson when he made that statement, he meant the statement "to be a thorn in [the teacher's] side" to be understood solely in terms of a practical joke.

The accused's argument that his sole purpose in posting the Internet message was to carry out a joke does not establish that he acted only with knowledge. Although the accused may have contemplated his action for only a few moments, he had a clear objective: to put the teacher through the mental anguish of learning that a message on an Internet website was announcing his purported confession to engaging periodically in illegal sexual conduct with female students. That is intentional conduct within the meaning of the ABA Standards. The Bar need not prove that the accused also had other specific objectives in mind, such as to hurt the teacher professionally or to advance his own career in some way. We conclude that the accused acted intentionally because he had the conscious objective to harm the teacher in the manner described above.

## C. *Actual and Potential Injury*

 The accused's conduct caused some degree of actual harm. The teacher, law enforcement officers, and the District Attorney's office had to expend time investigating the matter. The accused's conduct also fueled suspicions about the teacher's conduct toward students and spurred someone to send an angry letter to school officials. The accused's conduct also created the risk of potential injury to the teacher's career and reputation, and potential injury to the high school and community.

## D. *Preliminary Sanction*

The ABA Standards provide the following guidance for an appropriate sanction for conduct involving dishonesty, fraud, deceit, or misrepresentation:

"Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects, or in cases with conduct involving dishonesty, fraud, deceit, or misrepresentation:

"Disbarment is generally appropriate when:

"(a) a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses; or

"(b) a lawyer engaged in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice."

ABA Standard 5.11.

"Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 [disbarment] and that seriously adversely reflects on the lawyer's fitness to practice."

ABA Standard 5.12.

"Reprimand is generally appropriate when a lawyer knowingly engages in any other conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law."

ABA Standard 5.13.

The Bar contends that the ABA standards quoted above

"may not be a perfect fit in this case because the only one that addresses a lawyer's intentional failure to maintain personal integrity is Standard 5.11 concerning disbarment. Although the Bar asserts that the [a]ccused acted intentionally, it does not contend that he should be disbarred for his conduct in this case."

The Bar's observation about the ABA Standards is correct. By contrast to ABA Standard 5.11(b), ABA Standards 5.12 and 5.13 refer to an accused lawyer's *knowing* conduct involving dishonesty, fraud, deceit, or misrepresentation. The principal difference between those two standards is the extent to which the conduct adversely reflects on the accused lawyer's fitness to practice law. Additionally, the standards indicate that a suspension is generally appropriate when the accused lawyer engages in criminal conduct.

We already have concluded that the accused's dishonest act is of a kind that adversely reflects on his fitness to practice law. We also note, however, that the accused was not charged with a crime and the Bar does not argue that the accused engaged in criminal conduct. In addition, the accused's conduct did not arise from the practice of law and he did not benefit personally from his improper conduct. Although the accused acted intentionally and caused some actual injury, the above facts lead us to conclude that the accused's conduct does not "seriously" adversely reflect on his fitness to practice law. As a result, we determine preliminarily that the ABA Standard that most closely fits the conduct in this proceeding is Standard 5.13.

E. *Aggravating and Mitigating Circumstances*

The ABA Standards list aggravating factors that the court may consider to "justify an increase in the degree of discipline to be imposed." ABA Standard 9.21. We find that one aggravating circumstance is present: the vulnerability of the victim. ABA Standard 9.22(h).

The Bar asserts that the accused acted with a selfish motive, ABA Standard 9.22(b), and that the accused submitted false statements during the disciplinary process, ABA Standard 9.22(f). The Bar argues that the accused had a selfish motive because he acted out of "personal animosity towards [the teacher]." We do not agree, because the proof

regarding those matters is equivocal. Specifically, the Bar's evidence is insufficient to prove that the accused's motive was directed at achieving personal or financial gain or to "exact revenge." *See, e.g., In re McDonough*, 336 Or 36, 44, 77 P3d 306 (2003) (finding selfish motive because lawyer acted to serve own personal convenience by driving with suspended license); *In re Flannery*, 334 Or 224, 234, 47 P3d 891 (2002) (finding selfish motive when lawyer falsified address to renew Oregon driver license so he could rent car for upcoming trip); *In re Lackey*, 333 Or 215, 229, 37 P3d 172 (2002) (finding selfish motive because lawyer sought to "exact revenge" on his superiors). We do not think that the evidence in this proceeding supports the aggravating factor of "selfish motive."

As to the other aggravating factor on which the Bar relies, the Bar has not presented any evidence that the accused testified falsely when he stated that there were rumors in the community about the teacher having had sexual relationships with high school students. We note that the teacher testified that such "vague rumors" did exist in the community and that the trial panel found that "[t]he posted message was, in essence, a re-publication of existing rumors and other information concerning [the teacher], all of which had gained some circulation * * *." To make that finding, the trial panel implicitly accepted the accused's testimony and found him to be credible. In light of both the evidence in the record and the trial panel's finding, we conclude that the Bar did not prove that the accused submitted false statements to the trial panel.

The ABA Standards also list factors that the court may consider in mitigation. We find that several mitigating circumstances are present: the accused has no prior disciplinary record,[1] ABA Standard 9.32(a); the accused made a full and free disclosure to the trial panel and had a cooperative attitude toward the proceedings, ABA Standard 9.32(e); the accused was inexperienced in the practice of law, ABA Standard 9.32(f); and the accused showed genuine remorse,

---

[1] We note that, although the mitigating circumstance of a lack of prior discipline applies here, we afford it little weight because, at the time of his conduct, the accused had been admitted to the practice of law in Oregon for only five months.

ABA Standard 9.32(l). Sergeant Larson testified that the accused had good character and a good reputation with law enforcement and the local court, ABA Standard 9.32(g), and we credit that testimony.

We conclude that the mitigating circumstances outweigh the aggravating circumstance in this case.

## F. *Case Law*

The Bar argues that prior case law indicates that the court should suspend the accused for 60 days. The Bar cites *In re Hopp*, 291 Or 697, 634 P2d 238 (1981) (lawyer suspended for 60 days for taking action for purpose of harassing another lawyer, violating DR 7-102(A)(1), and for misrepresenting that he had done so on behalf of his "client," violating *former* DR 1-102(A)(4), when lawyer registered local business's recently expired assumed business name and then demanded $100 to relinquish registration), and *In re Spencer*, 335 Or 71, 58 P3d 228 (2002) (lawyer suspended for 60 days for assisting to register California resident's motor home in Oregon, violating DR 1-102(A)(3), and for allowing documents to be destroyed that prospective client had entrusted to him for purpose of determining whether to represent her, violating DR 9-101(C)(4)). In both those cases, the accused lawyer's misconduct was more egregious than the accused's conduct in this proceeding, because the conduct arose directly from the practice of law or involved criminal conduct. Also, this court based the sanction in those two cases on violations of multiple disciplinary rules. Thus, those cases provide only limited guidance in the present matter.

In our view, the prior lawyer discipline proceedings that most closely resemble this one are *Kumley* and *Flannery*. In *Kumley*, the accused lawyer, who was an inactive member of the Bar, filed forms in connection with his candidacy for the Oregon Legislative Assembly. On three of those forms he listed "attorney" as one of his present occupations, while omitting mention of his former occupation as a practicing attorney. Because the accused lawyer gave the false impression that he was presently qualified to practice law and because he committed the criminal act of false

swearing, the court concluded that the accused lawyer violated DR 1-102(A)(3), DR 1-102(A)(2) (prohibiting commission of "a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness to practice law"), and ORS 9.160 (providing in part that "no person shall * * * represent that person as qualified to practice law unless that person is an active member of the Oregon State Bar"). 335 Or at 648, 650.

In determining the appropriate sanction, this court found that the accused acted knowingly and caused potential harm. Because his conduct did not "seriously" adversely reflect on his fitness to practice law, the court determined preliminarily that the accused lawyer should be reprimanded, rather than suspended. In aggravation, the court found that the accused lawyer had committed multiple offenses and, in mitigation, that he had no prior record of discipline. Relying on *Flannery*, the court concluded that its prior case law confirmed that a reprimand was the appropriate sanction. *Kumley*, 335 Or at 653.

In *Flannery*, the accused lawyer, a resident of Washington, had used a friend's Oregon address to renew his Oregon driver license. The accused conceded that his conduct violated DR 1-102(A)(2), DR 1-102(A)(3), and ORS 9.527(2) (subject to discipline for being convicted of crime involving moral turpitude). 334 Or at 227.

In determining the appropriate sanction, the court concluded that the accused had acted intentionally, but that his conduct did not "seriously" adversely reflect on his fitness to practice law. The court determined that, in aggravation, the accused had a selfish motive and substantial experience in the practice of law. In mitigation, the court found that the accused had no prior disciplinary record, had provided information fully and freely to the trial panel and had cooperated in the disciplinary process, had a good character and good reputation, was subject to other penalties and sanctions, and was remorseful. The court took into consideration the fact that the conduct was unlikely to recur and imposed a public reprimand. *Id.* at 237.

The present proceeding is distinguishable from both *Kumley* and *Flannery* in that the accused's conduct caused

some degree of actual injury, as discussed above, he acted intentionally, rather than knowingly as in *Kumley*, and he has not suffered other penalties or sanctions as in *Flannery*. However, in both *Kumley* and *Flannery*, this court emphasized that a reprimand, rather than a suspension, was the appropriate sanction because the accused lawyer's conduct did not "seriously" adversely reflect on the lawyer's fitness to practice law. In this proceeding, we also conclude, as discussed above, that, although the accused's conduct reflects adversely on his fitness to practice law, it does not do so "seriously." In so concluding, we emphasize that, unlike the lawyers in *Kumley* and *Flannery*, the accused has not been charged with a crime, nor has the Bar asserted that he committed a criminal act.

In addition, the mitigating factors in this proceeding outweigh the aggravating factors. This court has relied on that circumstance in prior cases to justify imposing a reprimand rather than a suspension. *See, e.g., Flannery*, 334 Or at 235; *In re Howser*, 329 Or 404, 987 P2d 496 (1999) (although ABA Standards provided preliminarily that suspension was appropriate when accused lawyer knew he had current client conflict and failed to withdraw promptly, accused lawyer publicly reprimanded when mitigating factors outweighed aggravating factors). Finally, we are persuaded here, as this court was in *Flannery*, that the conduct giving rise to this proceeding is unlikely to recur. *See also In re Fulop*, 297 Or 354, 685 P2d 414 (1984) (lawyer publicly reprimanded for attempting to assist friend in defrauding creditor because violation was "isolated instance of misbehavior"); *In re Carstens*, 297 Or 155, 683 P2d 992 (1984) (lawyer convicted of misdemeanor theft for signing wife's name to certificate of title for item of personal property held jointly and then selling it publicly reprimanded in part because lawyer's conduct was unlikely to recur).

After considering our precedents, we do not agree with the Bar that the accused's misconduct requires a 60-day suspension. Instead, those precedents persuade us that a public reprimand will protect the public adequately.

The accused is publicly reprimanded.

**BALMER, J.**, dissenting.

I agree with the majority that "professional misconduct," which DR 1-102(A)(3) prohibits, may include conduct by a lawyer involving "dishonesty, fraud, deceit, or misrepresentation," even if that conduct does not violate the criminal law or occur in the course of the practice of law. I further agree with the majority that the accused's conduct here was boorish and perhaps tortious, and that it showed a singular lack of judgment. I disagree, however, with the majority's conclusion that the accused's conduct in this instance violated DR 1-102(A)(3) and, for that reason, I respectfully dissent.

As the majority correctly observes, not every instance of dishonesty or deceit violates DR 1-102(A)(3). A "false or dishonest statement" unrelated to professional conduct is not subject to professional discipline unless there is a nexus between that statement and "the lawyer's fitness to practice law." 337 Or at 233. No one would argue, for example, that a lawyer's untrue statement to a child regarding the tooth fairy violates the rule, because the false statement does not demonstrate that the lawyer lacks the integrity or honesty necessary to practice law. However, a lawyer's pattern of dishonest statements to a spouse or employer about matters that are important to the spouse or employer, depending on the circumstances, could violate DR 1-102(A)(3). This court recently defined the term "dishonesty" in DR 1-102(A)(3) as "conduct that indicates a *disposition* to lie, cheat, or defraud; untrustworthiness; or a lack of integrity." *In re Dugger*, 334 Or 602, 609, 54 P3d 595 (2002) (emphasis added). That definition properly focuses the issue in the disciplinary proceeding on whether the accused lawyer's dishonest conduct likely was an isolated event or, instead, indicates a disposition to act in a manner that calls into question the lawyer's fitness to practice law.

The majority rephrases that test as whether the lawyer's conduct "indicate[s] that the lawyer *lacks* those characteristics of trustworthiness and integrity that are *essential* to the practice of law." 337 Or at 234 (emphasis added). However, the inquiry is still the same: should the court infer from

a lawyer's specific act or acts of dishonesty a general disposition to lie, cheat, or defraud. In my view, the majority fails to apply that test properly to these facts.

The majority opinion accurately describes the accused's conduct in registering on the Classmates.com website, falsely using the name of a classmate of his who was now a high school teacher, and posting an inflammatory and personal message about the teacher. The accused's conduct took place over a period of minutes on February 19, 2001. The trial panel found that the message was removed within a matter of days. The record reflects that at least one person viewed the accused's posted message before its removal. That person sent a letter critical of the teacher, together with a copy of the message, to various school officials, causing harm to the teacher.

On those facts, I do not believe that the Bar has proved that the accused's dishonest conduct indicates a disposition to dishonesty or demonstrates that the accused lacks the integrity necessary to practice law. The record shows no dishonest or deceitful conduct by the accused other than his action on February 19, 2001. When the accused was informed of the consequences of his conduct, he contacted the teacher, apologized, and took steps that the teacher suggested to minimize the adverse impact of the accused's conduct.

Neither the brevity of the misconduct nor the accused's explanation that he intended it as a practical joke excuses what the accused did. However, not every dishonest act or lapse of judgment, even one that harms another person, violates DR 1-102(A)(3), and that is the case here. I do not disagree with the majority's determination that the accused acted dishonestly, but only with its conclusion that the disciplinary rules extend to that dishonest conduct.

For the foregoing reasons, I respectfully dissent.

Kistler, J., joins in this separate opinion.