Argued and submitted January 6, accused reprimanded August 14, 2003

# In re Complaint as to the Conduct of

## LLOYD S. KUMLEY,
*Accused.*

## (OSB 01-32; SC S49372)

75 P3d 432

Kevin T. Lafky, of Lafky & Lafky, Salem, argued the cause and filed the brief for the accused.

Jane E. Angus, Assistant Disciplinary Counsel, Lake Oswego, argued the cause and filed the brief for the Oregon State Bar. With her on the brief was Russell Lipetzky, Bar Counsel, Salem.

Before Carson, Chief Justice, and Gillette, Durham, Riggs, De Muniz, and Balmer, Justices.*

---

* Leeson, J., resigned January 31, 2003, and did not participate in the decision of this case.

PER CURIAM

## PER CURIAM

In this lawyer disciplinary proceeding, the Oregon State Bar (Bar) alleged that the accused, an inactive member of the Bar, violated two Code of Professional Responsibility Disciplinary Rules—DR 1-102(A)(2) and DR 1-102(A)(3)— and one statute—ORS 9.160—by describing himself as an "attorney" in forms that he submitted to two state agencies in connection with his candidacy for a seat in the state legislature. A trial panel of the Disciplinary Board determined that the accused had committed all three charged violations and suspended him from the practice of law for 12 months. Because of the length of suspension, our review of the trial panel's decision is automatic. ORS 9.536(2); BR 10.1. On *de novo* review, ORS 9.536(3), we conclude that the accused violated both rules and the statute, but that a reprimand is the appropriate sanction.

## I. FINDINGS OF FACT

The Bar proved the following facts by clear and convincing evidence. The accused graduated from law school in 1975 and practiced law in California from 1975 to 1984. In 1984, the accused moved to Oregon, joined the Bar, and opened a law practice. In January 1988, the accused applied to the Bar for a transfer to inactive membership status, which the Bar granted. In doing so, the accused signed a form of application used by the Bar. That application (and a later one that the accused also signed) included the following statement: "Inactive members [of the Bar] may not practice law *or hold themselves out as attorneys in the State of Oregon*." (Emphasis added.) The accused remained inactive through November 1989 when he sought, and was granted, reinstatement as an active member. In 1992, the accused returned to inactive status. He has continued as an inactive member of the Bar since that time.

In early 2000, the accused took steps toward running for a seat in the Oregon House of Representatives. In March 2000, he signed and filed with the Secretary of State a declaration of candidacy. That declaration contained certain information required by ORS 249.031 including, among other

things, "[a] statement of the candidate's occupation, educational and occupational background and prior governmental experience."[1] On that form, under the heading "Occupation (present employment - paid or unpaid)," the accused stated, "Small Businessman - self-employed property manager; Attorney." Under the separate heading "Occupational Background (previous employment - paid or unpaid)," the accused stated, "Owner/Manager Salem Day Care Centers and Preschools; Computer Analyst." He made no mention of any background or previous employment as an "attorney."

Also in March 2000, the accused filed a "Candidate's Statement for State Voters' Pamphlet" with the Secretary of State.[2] That form mirrored the accused's declaration of candidacy form, *i.e.*, it listed his "Occupation" as "Self-employed Small Businessman and Attorney," but made no mention under the heading "Occupational Background" that he had been, but was not at the time of his candidacy, a practicing attorney. The accused's statement was included in the voters' pamphlet for the 2000 primary election, which the Secretary of State distributed to registered voters.

In April 2000, the accused filed a "Candidate's Annual Verified Statement of Economic Interest" with the Oregon Government Standards and Practices Commission (GSPC), as required by ORS 244.050(1)(c). One section of that form required candidates to provide specific further information "if you or a member of your household was an officer or director of a business * * * during 1999."[3] The

---

[1] The declaration remains on file with the pertinent elections official—in this case, the Secretary of State. ORS 249.035(1). Once filed, the declaration is "conclusive evidence" that the elector who filed it is a candidate for the office in question, ORS 249.042, unless the declaration is withdrawn not later than the sixty-seventh day before the date of the primary election (ORS 249.170) or general election (ORS 249.180) in which the elector seeks to be a candidate.

[2] ORS 251.065 provides that candidates for any state office may file a statement with the Secretary of State for inclusion in the state voters' pamphlet. ORS 251.085 provides that a candidate's statement "shall begin with a summary of the following: Occupation, educational and occupational background, and prior governmental experience." Unlike the declaration of candidacy, which merely remains on file subject to public inspection, a candidate's voters' pamphlet statement is designed specifically for distribution to the voting public.

[3] In a definitions section, the form defined the term "business" as "any corporation, partnership, proprietorship, firm, enterprise, franchise, association, organization, self-employed individual and any other legal entity operated for economic gain."

accused responded that he was a "self-employed attorney" for a business called "Lloyd Kumley, Attorney at Law." Under the heading "Description of Business," the accused wrote "attorney/trustee." However, under another section of the form dealing with sources of income, the accused did not identify "Lloyd Kumley, Attorney at Law" as a source of any income during 1999. Neither did anything else that the accused stated in the report suggest that he had received any earnings as an attorney.

The accused obtained his party's nomination for the House of Representatives and, in August 2000, filed another "Candidate's Statement for State Voters' Pamphlet" form, this time for inclusion in the voters' pamphlet for the November general election. In that form, the accused again stated his "occupation" as "Small businessman - Self-employed property manager; Attorney." He also again omitted mention of his former status as a practicing attorney under the heading, "Occupational Background."

The accused lost the general election. Shortly after that election, the Bar received an ethics complaint and, in due course, filed the present complaint against the accused. The complaint alleged that the accused had represented himself as an "attorney" in various election and government ethics forms and that those representations

> "were false and known to be false at the time he made them. The accused expressed or implied that he was an active member of the Bar, authorized to practice law. The accused did not disclose that he was an inactive member and not authorized to practice law or represent himself as an attorney."

The Bar charged the accused with violating two disciplinary rules, DR 1-102(A)(2) (criminal act adversely reflecting on fitness to practice law) and DR 1-102(A)(3) (dishonesty, fraud, deceit, or misrepresentation), and one statute, ORS 9.160 (only active members of Bar may practice law or represent themselves as qualified to practice law).

In his answer, the accused admitted that he had described himself as an "attorney" in the various forms, but denied that those statements violated any criminal law or amounted to knowing falsehoods. In the trial panel hearing,

however, the accused acknowledged that one of the statements at issue—his statement in the Verified Statement of Income that, in the year 1999, he was a self-employed attorney for a business named "Lloyd Kumley, Attorney at Law"—was incorrect. He asserted nonetheless that listing "attorney" as one of his occupations on the other forms was correct. He also argued that, in any event, none of the statements was knowingly false.

As previously noted, the trial panel ultimately concluded that the accused had committed all three of the charged violations and imposed a 12-month suspension. We now examine each of those charges.

## II.   DR 1-102(A)(3)

DR 1-102(A)(3) provides:

"It is professional misconduct for a lawyer to:

"* * * * *

"(3)   Engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

The trial panel concluded that the accused violated DR 1-102(A)(3) by (1) listing "attorney" under the heading "occupation" in the declaration of candidacy form and the two voters' pamphlet forms; and (2) describing himself as a "self-employed attorney" working for a firm named "Lloyd Kumley, Attorney at Law" in his Verified Statement of Economic Interest.

We consider, first, the accused's statements in the declaration of candidacy and the two voters' pamphlets listing "attorney" as one of his present "occupations." The trial panel concluded that it was an affirmative misrepresentation for the accused to describe himself as an "attorney." For the purposes of DR 1-102(A)(3), a misrepresentation is a " 'false statement of a material fact or a nondisclosure of a material fact.' " *In re Dugger*, 334 Or 602, 609, 54 P3d 595 (2002) (quoting *In re Starr*, 326 Or 328, 343, 952 P2d 1017 (1998)). The rule requires, "at the least, that a lawyer *knowingly* engage in a misrepresentation." *In re Jones*, 326 Or 195, 198, 951 P2d 149 (1997) (emphasis in original). When considering an

assertion that a lawyer has engaged in affirmative misstatement, our initial focus is on the truth or falsity of the fact asserted. *In re Huffman*, 331 Or 209, 216, 13 P3d 994 (2000).

■    We begin with the candidacy and voters' pamphlet forms. In that regard, it is true that the term "attorney" conveys the implication of a present authority to perform legal work on behalf of another.[4] That is the most likely way that the public would understand the use of the term. However, it also is true to some degree that the term "attorney," in common parlance, supports other inferences, including some that do not imply a present capacity to practice law. For example, one inference that reasonably arises from a statement that a person is an attorney is that the person is a member of a bar.[5] At the relevant time, the accused was a member, although inactive, of the Bar. Thus, standing alone, the meaning of the term as it was used on the forms was ambiguous and may not have served as a basis for disciplining the accused under DR 1-102(A)(3).

But the term did not stand alone. The accused used the term in three different government forms to describe his *present* "occupation." "Occupation" means "the principal business of one's life: a craft, trade, profession or other means of earning a living: EMPLOYMENT, VOCATION." *Webster's Third New Int'l Dictionary* 1560 (unabridged ed 1993). The Bar asserts that, by listing "attorney" as his present "occupation" in 2000, the accused necessarily represented that he was an active attorney *at that time*. We agree: From his choosing to list "attorney" as his *present* occupation at a time when he was inactive, while also failing to list "attorney" as a *previous* occupation (where the accused earlier *had* actively practiced law), we infer that the accused knowingly chose to create a false impression that he presently was a practicing attorney. Under those circumstances, the accused's statements were false.

---

[4] *See, e.g., Black's Law Dictionary* 128 (6th ed 1990) (defining "attorney at law" as "[p]erson admitted to practice law in his respective state and authorized to perform both civil and criminal legal functions for clients * * *").

[5] In that regard, we note that, for purposes of the State Bar Act, ORS 9.005 to 9.755, the term "attorney" is defined, simply, as "a member of the bar." ORS 9.005(1).

■    The trial panel also asserted that, by describing him-self as an attorney without simultaneously mentioning his inactive status, the accused engaged in "misrepresentation by nondisclosure." That may be true in the abstract sense: Any affirmative misstatement is a misstatement in part because of the failure contemporaneously to make other, clar-ifying statements. But that does not mean that any affirma-tive misstatement may be made into double violations of the disciplinary rules. When the Bar proves an affirmative mis-statement, we shall not also find a separate violation for fail-ure to disclose a fact that would have kept the affirmative statement from being misleading.

Having determined that the three statements in question were false, we next consider whether the state-ments were material. The statements were aimed, at a mini-mum, at the voters in the accused's electoral district. Indeed, ORS 251.085 requires inclusion of such statements in any voters' pamphlet statement for the very reason that any can-didate's employment is one of the bases from which voters will assess whether the candidate has the background and experience to be an effective legislator. Here, in representing that he was an "attorney," the accused was stating that he had the knowledge, abilities, and ethical standards that the public ordinarily associates with membership in a bar. That was accurate, as far as it went. However, the accused also was creating the impression that he at that time could walk out of the chambers of the Oregon House of Representatives and down the street to the Marion County Courthouse to try a case on behalf of a client. That was inaccurate and, in our view, material. We believe that many voters would view the fact that a candidate was an "inactive" attorney, rather than an "active" attorney, as significant in choosing for whom to vote. The accused's statements implied that he enjoyed the latter status when, in fact, he did not. We find by clear and convincing evidence that the accused violated DR 1-102(A)(3) in his statement on his declaration of candidacy form and in his two voters' pamphlet statements.

■    We turn now to the accused's statement in his Verified Statement of Economic Interest that, in 1999, he was a "self-employed attorney" in a business denominated as "Lloyd Kumley, Attorney at Law." We must consider

whether, by completing the Verified Statement in that manner, the accused engaged in conduct involving dishonesty or misrepresentation.

We need not dwell on the question whether the statement at issue was false. The accused himself admits that it was "inaccurate." The accused argues, however, that the inaccuracy was unconscious and unintentional. Before the trial panel, he explained that the form was confusing and that his statement was only a clumsy attempt to account for a small amount of money that he had earned as a trustee. The trial panel rejected that explanation, finding that "the accused has not provided a cred[ible] explanation and is not credible." We generally give substantial weight to a trial panel's credibility findings. *In re Gustafson*, 333 Or 468, 470, 41 P3d 1063 (2002). In keeping with that practice, we accept the trial panel's rejection of the accused's explanation and the trial panel's concomitant conclusion that the accused made the statement knowingly.

As we have noted, however, to amount to misrepresentation under DR 1-102(A)(3), a knowing false statement also must be material. Here, we conclude that the Bar has failed to show that the statement met that standard. In that regard, we note that the Verified Statement of Economic Interest serves principally as a vehicle for tracking possible economic conflicts of elected officials and candidates for public office. The Bar has not shown how the statement was materially false respecting the accused's sources of income, either actual or potential. The form did not in any of its sections indicate that the accused had obtained any economic benefit from his activities as "Lloyd Kumley, Attorney at Law" or from any work as a "self-employed attorney." Whatever the statement in question might suggest about the accused's status as a practicing attorney—an issue that we have discussed elsewhere—it is not material with regard to the accused's economic interests. We hold that the accused did not make a material misrepresentation for purposes of DR 1-102(A)(3) in his Verified Statement of Economic Interest.

Neither did the accused's statement in the Verified Statement of Economic Interest amount to or demonstrate

"dishonesty" for purposes of that disciplinary rule. Dishonesty is conduct that "indicates a disposition to lie, cheat, or defraud; untrustworthiness; or a lack of integrity." *In re Dugger*, 334 Or at 609. We are not persuaded that this single instance of a nonmaterial falsehood is indicative of any of those character traits or tendencies.

To conclude: We hold that the accused violated DR 1-102(A)(3) by stating that he was an "attorney" in his declaration of candidacy form and the two voters' pamphlet forms, but not by stating, in his Verified Statement of Economic Interest, that he was a "self-employed attorney" at a business called "Lloyd Kumley, Attorney at Law."

### III.   DR 1-102(A)(2)

■■   DR 1-102(A)(2) provides that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness to practice law." In considering an alleged violation of DR 1-102(A)(2), our focus is on whether the lawyer committed a criminal act. It does not matter that the lawyer was not prosecuted for or convicted of any crime. *See, e.g., In re Kirkman*, 313 Or 181, 184, 830 P2d 206 (1992) (concluding that accused lawyer committed three crimes despite fact that he had not been convicted of those crimes).

The Bar alleged that the accused's statements violated a number of criminal laws: ORS 260.715(1) ("[n]o person shall knowingly make a false statement * * * where a statement * * * is required under the elections laws"); ORS 244.110 (statements of economic interest shall contain written declaration that statement is made under penalties of false swearing and no person willfully shall return statement containing such declaration that person does not believe to be true); ORS 162.065 (defining crime of perjury as making "false sworn statement in regard to a material issue, knowing it to be false"); and ORS 162.075 (defining crime of false swearing as making "false sworn statement, knowing it to be false"). The Bar contends that, because the accused's alleged violations of those statutes involve making false statements under oath or in documents in which the truth is required by

law, they necessarily reflect adversely on the accused's honesty and fitness to practice law.

We consider, first, the Bar's contention that the accused's statements amounted to criminal acts. We have held that the accused made four separate false statements in the various documents that he submitted in connection with his run for the House of Representatives in 2000. As noted, under ORS 260.715(1), it is a crime for a person to "knowingly make a false statement * * * where a statement * * * is required under the election laws." We already have determined that the accused knew that the statements in question were false in the context in which he made them. The only remaining question is whether the statements were "required" by the election laws, as that term is used in ORS 260.715(1).

They were. The accused could not run for the House without filing a declaration of candidacy. ORS 249.016; ORS 249.020(1). That declaration had to include, *inter alia*, a "statement of the candidate's occupation." ORS 249.031(1)(i). The accused was not required to file a candidate's statement in the voters' pamphlet but, once he elected to do so, he was required to include in each such statement a "summary" that included his "[o]ccupation." ORS 251.085. Accordingly, we find that the accused committed three criminal acts in connection with those statements.

As discussed above, we also have found that the accused's statement in his Verified Statement of Economic Interest that, in 1999, he held the title of "self-employed attorney" for a law practice bearing his name was knowingly false. The statement at issue was a "sworn statement" for purposes of ORS 162.075.[6] To commit the crime of false swearing, a person need only "make[ ] a false sworn statement, knowing it to be false." ORS 162.075. The accused committed the crime of false swearing, as ORS 162.075 defines that crime.

---

[6] The statement was required to be, and was, verified by a written declaration that it was made under the penalties for false swearing. Under ORS 244.110(1), "[s]uch declaration shall be in lieu of any oath otherwise required."

The question remains whether the accused's four criminal acts are ones that "reflect[ ] adversely on [his] honesty, trustworthiness or fitness to practice law." They do. We have held that criminal acts involving false swearing fall into that category. *See, e.g., In re Davenport,* 334 Or 298, 49 P3d 91 (2002) (violation based on false statements under oath); *In re Staar,* 324 Or 283, 924 P2d 308 (1996) (violation based on false swearing in petition filed in court). Thus, we conclude that the accused's four criminal acts with respect to his declaration of candidacy, his two voters' pamphlet statements, and his Verified Statement of Economic Interest all reflect to some extent on the accused's honesty and fitness to practice law and, therefore, constitute violations of DR 1-102(A)(2).

## IV.   ORS 9.160

■      ORS 9.160 provides:

"Except for the right reserved to litigants by ORS 9.320 to prosecute or defend a cause in person, no person shall practice law or represent that person as qualified to practice law unless that person is an active member of the Oregon State Bar."

The trial panel concluded that the accused had violated ORS 9.160, but did not explain that conclusion. We assume that it accepted the Bar's contention that, by listing "attorney" as a present occupation on various forms, the accused had "represent[ed himself] as qualified to practice law" within the meaning of the statute.

We agree. As we have explained elsewhere, the accused created the impression by what he stated in his various election materials that he presently was qualified to practice law. It is true that, in describing his present occupation as an "attorney" in the various documents, the accused does not appear to have been attempting to ferret out potential clients for a reopened law practice. But, as we also have explained elsewhere, he was clothing himself in the mantle of an active "attorney," a status that might find favor with voters. We find by clear and convincing evidence that the accused violated ORS 9.160.

## V. SANCTION

We now must determine the appropriate sanction. In making that determination, we employ the methodology prescribed in the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991) (amended 1992) (ABA Standards) and our own case law.

### A. *Duty Violated*

Under the ABA Standards, we first consider the duty violated. ABA Standard 3.0(a). In each of his violations, the accused violated his duty to the public "to maintain the standards of personal integrity upon which the community relies." ABA Standard 5.0.

### B. *Mental State*

For reasons discussed elsewhere in this opinion, we conclude that the accused committed each of the violations knowingly, that is, with the "conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." ABA Standards at 17.

### C. *Actual and Potential Injury*

We next consider the potential and actual injury, if any, that the accused's misconduct caused. ABA Standard 3.0(c). "Injury," according to the ABA Standards, includes "harm to a client, the public, the legal system or the profession which results from a lawyer's conduct." ABA Standards at 7. The accused's misconduct caused potential harm to the voters of the accused's district, to the extent that it created a false impression of the accused's qualifications—a false impression that some voters might have found relevant to their selection of a candidate.

### D. *Preliminary Sanction*

The trial panel suggests that the ABA Standards would support a preliminary sanction of disbarment, because the accused engaged in "serious criminal conduct a necessary element of which includes * * * false swearing." ABA Standard 5.11(a). Although we have held that the accused committed false swearing, we do not find that his conduct was "serious" criminal conduct. None of the accused's other acts would justify disbarment under the ABA Standards.

ABA Standard 5.12 provides:

"Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice."

ABA Standard 5.13 provides:

"Reprimand is generally appropriate when a lawyer knowingly engages in any other conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law."

We are persuaded that the first standard is inapplicable here, because the accused's conduct does not *seriously* adversely reflect upon his fitness to practice law. And, although the accused's conduct created a potential for harm, the present record does not permit us either to determine whether harm actually occurred or, if it did, the nature and extent of that harm.

Taking into account the duty violated, the accused's mental state, and the actual and potential harm, we conclude that ABA Standard 5.13 most closely fits the misconduct at issue. That standard indicates that a public reprimand is the appropriate sanction.

E. *Aggravating and Mitigating Circumstances*

We find one aggravating circumstances, *viz.*, multiple offenses. ABA Standard 9.22(d). We also find one mitigating factor—the fact that the accused has no prior record of discipline. ABA Standard 9.32(a). The two factors essentially cancel each other out.

F. *Case Law*

The Bar does not contend that the accused's knowing misstatements respecting his status as an "attorney" would, standing alone, require a suspension. However, the Bar points to a number of our cases as suggesting that a period of suspension is the proper sanction when a lawyer makes a false statement in a sworn or verified form. The Bar relies on *In re Wyllie*, 327 Or 175, 957 P2d 1222 (1998) (two-year suspension for false statement on MCLE compliance form);

*Staar*, 324 Or at 293 (two-year suspension for false statements in petition for restraining order); *Davenport*, 334 Or at 325 (two-year suspension for false testimony); and *In re Claussen*, 322 Or 466, 909 P2d 862 (1996) (one-year suspension for misrepresentations in bankruptcy petition).

The cases that the Bar cites are inapposite. In all those cases, the lawyer's false statements either significantly benefitted the lawyer or significantly injured some other person and, in all but one of those cases, the lawyer's conduct was found to be not just knowing, but intentional. *Wyllie*, 327 Or at 182; *Claussen*, 322 Or at 485; *Davenport*, 334 Or at 319. The facts here are far less egregious.

In our view, the lawyer discipline case that most closely resembles this one is *In re Flannery*, 334 Or 224, 47 P3d 891 (2002). In *Flannery*, this court reprimanded a lawyer who committed the crime of "making a false application for a driver's license," ORS 807.530. The court decided that a reprimand was appropriate, in part, because the lawyer's false statements resulted in only "trivial" personal gain and did not seriously adversely reflect on the lawyer's fitness to practice law. *Flannery*, 334 Or at 232-37. Much the same could be said of the present case.

Our examination of the case law and of aggravating and mitigating factors confirms the preliminary sanction that we initially identified as relevant to this proceeding. We conclude that a public reprimand is the appropriate sanction.

The accused is reprimanded.