IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

IN THE MATTER OF A MEMBER
OF THE STATE BAR OF ARIZONA

**LISE R. WITT,**
**ATTORNEY NO. 13118**
*Respondent.*

No. SB-22-0056-AP
Filed March 11, 2024

Appeal of Hearing Panel Opinion and Disciplinary Order from the
Office of the Presiding Disciplinary Judge
The Honorable Margaret H. Downie, Presiding Disciplinary Judge
No. PDJ20219111
**AFFIRMED IN PART, VACATED IN PART**
**SUSPENSION IMPOSED**

COUNSEL:

Kathleen E. Brody, Mitchell Stein Carey Chapman, PC, Phoenix, Attorneys
for Lise R. Witt

Stephen P. Little, Senior Bar Counsel, State Bar of Arizona, Phoenix,
Attorney for State Bar of Arizona

JUSTICE MONTGOMERY authored the Opinion of the Court, in which
CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER and
JUSTICES BOLICK, LOPEZ, BEENE, and KING joined.

JUSTICE MONTGOMERY, Opinion of the Court:

¶1 Respondent, Lise R. Witt, and the State Bar each appealed from a disciplinary panel's decision and order imposing sanctions arising from Respondent's unauthorized contact with her client's co-defendant, who was in custody and represented by counsel. The panel determined that Respondent negligently violated Arizona Rules of Professional Conduct ("ERs") 4.2 (communicating with represented person) and 8.4(d) (conduct prejudicial to the administration of justice), but not 4.1(a) (truthfulness in statements to others), 4.4(a) (respect for rights of others), or 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation).[1] Consequently, the panel imposed a reprimand and two years' probation with an additional five hours of continuing legal education ("CLE") in ethics each year, and ordered Respondent to pay the State Bar's costs.

¶2 By Decision Order, we agreed with the panel that Respondent violated ERs 4.2 and 8.4(d) but we disagreed that she did so negligently. Instead, we concluded her violation of ERs 4.2 and 8.4(d) was done knowingly and that she also knowingly violated each of the remaining ERs as charged. Accordingly, we suspended her from the practice of law for 120 days, imposed the same probationary term and conditions as the panel, and ordered payment of costs. We also stated that this Opinion would follow.

**BACKGROUND**

¶3 Respondent was first admitted to practice in Arizona on May 19, 1990. From August 1990 through July 1993, she worked as an assistant city prosecutor for the City of Phoenix. She then worked as a sole practitioner defending misdemeanor DUI cases until August 1997, when she went on inactive status. On January 27, 2005, she was placed on interim suspension due to her guilty plea for health-care fraud in violation of 18 U.S.C. § 1347, which occurred from about 1995 to 1999. This Court subsequently disbarred her on September 26, 2006.

¶4 Respondent later sought reinstatement and retook and passed the Multistate Professional Responsibility Exam in November 2011 and the Bar Exam in February 2012. She also joined the Arizona Attorneys for

---

[1] Citations to rules are to current versions that have not been materially altered unless otherwise noted.

Criminal Justice ("AACJ") in October 2012 because she wanted to be a criminal defense attorney after she was reinstated and for the CLE offered by AACJ. She also served on AACJ's Legislative and Policy Committee from 2015 to 2019, which seeks to protect the rights of criminal defendants. After two failed attempts in 2012 and 2014, Respondent was reinstated by this Court in November 2017 and resumed her criminal law practice.

¶5　　　　In March 2021, Respondent was privately retained to represent Larry Williams, who was charged with five class 2 felony child sex-trafficking offenses. Respondent visited her client on a weekly basis. Tainisha Haynes, Williams's girlfriend, was a co-defendant in the same case and represented by her own attorney. Both Williams and Haynes were in custody.

¶6　　　　On April 26, 2021, Respondent emailed Haynes's attorney and proposed that Williams and Haynes each sign affidavits disputing the facts and circumstances alleged by the victim. After not receiving a response, Respondent called and left a voice message regarding her proposal. Haynes's attorney never responded.

¶7　　　　Haynes made dozens of calls in an attempt to speak with Respondent. Finally, after being notified by Williams that Haynes was trying to call her from the Estrella Jail, Respondent answered Haynes's call on June 11, 2021. The call lasted fifteen to twenty minutes during which Respondent and Haynes discussed the mutual affidavit idea and agreed to meet on June 17. In preparation for the meeting, Respondent reviewed Haynes's interview with police to avoid drafting an affidavit that contradicted Haynes's prior statements.

¶8　　　　On the day of the visit with Haynes, Respondent filled out a jail form that asked Respondent to identify her "relationship to inmate." Respondent wrote "attorney" and also presented her State Bar card to jail personnel. No one asked her whether she was Haynes's attorney.

¶9　　　　During the approximately one-hour meeting, Respondent advised Haynes that an affidavit would not hurt Haynes but instead would help her and Williams's cases. Respondent subsequently prepared and sent an affidavit to Haynes, which Haynes signed and returned. Respondent neither advised—or even tried to advise—Haynes's attorney of her phone call or visit with Haynes nor sent him a copy of either the draft or signed

affidavit.

¶10        Respondent then emailed the assigned prosecutor Haynes's affidavit as part of a plea deviation request on behalf of Williams. The prosecutor followed up by asking: "In regards to the affidavit from Ms. Haynes, I assume that you spoke with [her attorney] about it prior to sending it to me and prior to her providing it to you? Please let me know." Respondent replied: "Why is that relevant?" Respondent did not include Haynes's attorney in the correspondence, though the prosecutor alerted him to the email.

¶11        The prosecutor thereafter sought disclosure from Respondent about her contacts with Haynes. In response to the disclosure request, Respondent stated she was "withdrawing the sworn statement of Tainisha Haynes" and asked that it not be considered when evaluating the plea deviation request. Although the prosecutor agreed to not consider it, she continued to request disclosure about the contacts Respondent had with Haynes and the circumstances surrounding the affidavit. Respondent asserted that such information was not discoverable by the State.

¶12        During a trial management conference on September 13, 2021, discussion ensued about Respondent having communicated with Haynes without her lawyer's knowledge or consent. The trial judge asked Respondent: "[W]ould you like to enlighten me on this, because those are some pretty serious allegations." Respondent replied: "You know, Your Honor, I would, but I do not want to break attorney-client privilege, work product privilege, and in an abundance of caution, I assert my Fifth Amendment right against self-incrimination."

¶13        When the judge asked if Respondent planned to withdraw from Williams's representation, she replied in the negative. The judge then inquired whether she had consulted with bar counsel or ethics counsel, and Respondent again responded in the negative. The judge then stated: "I would highly . . . suggest you do that. You're telling me you are invoking your Fifth Amendment privilege, and you're telling me at the same time you're not withdrawing off this case . . . . I'm concerned about what I just heard." Later during the hearing, the judge advised Respondent: "[I]f what has been alleged is true, I may need to refer you to the Bar if you're not self-referring. I hate saying that. That's never something a judge wants to

say, but I am very concerned about what I heard."[2] Respondent advised the court: "I do take this very seriously and I will be consulting with ethics counsel."

¶14 On September 21, 2021, Respondent's counsel contacted the State Bar on her behalf to report her violation of ER 4.2. On September 22, 2021, the prosecutor filed a motion captioned "State's Motion for Determination of Counsel." In the motion, the prosecutor argued that Respondent had made herself a "necessary material witness" and that the affidavit Respondent prepared included avowals "in direct contradiction to statements" Haynes made to law enforcement. Later that same day, Respondent filed a motion to withdraw, citing "the issues discussed on the record on September 13 and the State's Motion filed on September 22."

¶15 The State Bar filed a one-count disciplinary complaint against Respondent in December 2021, alleging that during Respondent's representation of Williams, she violated ERs 4.1, 4.2, 4.4, 8.4(c), and 8.4(d). Respondent admitted that she violated ER 4.2 but moved for summary judgment regarding the remaining alleged ER violations and the aggravating factors alleged by the State Bar. The presiding disciplinary judge denied the motion.

¶16 After a disciplinary hearing at which Respondent, Haynes, Haynes's attorney, and the assigned prosecutor testified, the panel found Respondent negligently violated ERs 4.2 and 8.4(d) and determined that the State Bar did not prove by clear and convincing evidence that Respondent violated ERs 4.1(a), 4.4(a), or 8.4(c). In considering the appropriate sanction for these violations, the panel found two aggravating factors and three mitigating factors. With respect to aggravating factors, the panel found that Respondent's 2006 disbarment was a prior disciplinary offense pursuant to Standard 9.22(a), and that she had substantial experience in the practice of law pursuant to Standard 9.22(i). The three mitigating factors consisted of: Standard 9.32(b), absence of dishonest or selfish motive; Standard 9.32(e), full and free disclosure to disciplinary board or cooperative attitude toward proceedings; and Standard 9.32(l), remorse. The panel ultimately issued a reprimand and imposed two years of probation with additional CLE

---

[2] We commend the trial court for recognizing her clear duty under the circumstances. Ariz. R. Sup. Ct. 81, Code of Judicial Conduct Rule 2.15(B).

requirements. The State Bar and Respondent each appealed the sanction and respectively appealed various findings of fact and conclusions of law.

**¶17**        We accepted the State Bar's appeal and denied Respondent's cross-appeal. In a decision order, we affirmed the panel's finding that Respondent violated ERs 4.2 and 8.4(d), although we concluded that her conduct was done knowingly, not negligently. We further concluded that Respondent knowingly violated ERs 4.1(a), 4.4(a), and 8.4(c) and imposed a suspension along with the same term and conditions of probation as imposed by the panel, including the additional CLE requirements. We also indicated this Opinion would follow. We have jurisdiction pursuant to article 3 and article 6, sections 1, 5(3), and 5(6) of the Arizona Constitution and Arizona Supreme Court Rule 59(a).

**DISCUSSION**

**I. Standard of Review**

**¶18**        "We review the panel's conclusions of law de novo and its findings of fact by a clearly erroneous standard." *In re Martinez*, 248 Ariz. 458, 462 ¶ 6 (2020); *see also* Ariz. R. Sup. Ct. 59(j). "Findings are clearly erroneous if they are not supported by reasonable evidence." *In re Alexander*, 232 Ariz. 1, 5 ¶ 11 (2013). Despite this deferential standard, "this [C]ourt retains the ultimate authority to find facts, make conclusions of law, and impose discipline." *In re Marquardt*, 161 Ariz. 206, 215 (1989); *see also In re Levine*, 174 Ariz. 146, 149 (1993) ("In reviewing disciplinary proceedings, . . . [this Court is] an independent trier of both fact and law . . . .").

**II.  Professional Misconduct**

**¶19**        Allegations of misconduct must be proved by clear and convincing evidence. *In re Martinez*, 248 Ariz. at 462 ¶ 6; Ariz. R. Sup. Ct. 58(j)(3). Thus, the State Bar must show that it is "highly probable" that the allegations are true. *In re Alexander*, 232 Ariz. at 5 ¶ 11.

**A. ER 4.1 Truthfulness in Statements to Others**

**¶20**        ER 4.1(a) provides that "[i]n the course of representing a client a lawyer shall not knowingly . . . make a false statement of material fact or

law to a third person." "'Knowingly,' 'known,' or 'knows' denotes actual knowledge of the fact in question," which "may be inferred from circumstances." ER 1.0(f). A "material fact" is "[a] fact that is significant or essential to the issue or matter at hand, . . . a fact that makes a difference in the result to be reached in a given case." *Material Fact*, Black's Law Dictionary (11th ed. 2019). Comment 2 to ER 4.1 underscores that "[t]his Rule refers to statements of fact. Whether a particular statement should be regarded as one of fact can depend on the circumstances."

**¶21**        The State Bar alleged that Respondent violated ER 4.1 by writing "attorney" on the jail form concerning Respondent's relationship to Haynes and by telling Haynes that mutual affidavits would help and not hurt her case. The panel concluded that the State Bar did not prove a violation of ER 4.1. Respondent argues that the panel's conclusion should be affirmed because the State Bar failed to prove that she was intentionally dishonest. However, as Respondent notes in her briefing, a violation of ER 4.1(a) "requires *knowing* misconduct," not intentional misconduct. *See In re Tocco*, 194 Ariz. 453, 456 ¶ 10 (1999).

**¶22**        Though we concur in the panel's determination that Respondent's statements to Haynes about the affidavit do not constitute a violation of ER 4.1, the facts surrounding Respondent's assertion on the jail form present a different circumstance.

**¶23**        The question on the form used by jail staff specifically asked for Respondent's relationship to Haynes. Respondent's answer to this question—"attorney"—was false, and Respondent knew it was false. The panel nevertheless found that "[e]ven assuming *arguendo* that [Respondent] should not have written 'attorney' on the jail visitor form, this was not proven to be a 'material fact.'" However, by writing "attorney" on the jail form, Respondent was able to have an in-person, unmonitored visit with Haynes, as she had on prior occasions with Williams. Writing "attorney" on the jail form is, therefore, a "material fact." Consequently, there is clear and convincing evidence that while representing Williams, Respondent knowingly made a false statement of material fact to the Estrella Jail staff in violation of ER 4.1(a). *See Att'y Grievance Comm'n. v. Zeiger*, 53 A.3d 332, 338 (Md. 2012) ("A misrepresentation is made when the attorney 'knows the statement is false,' and cannot be 'the product of mistake, misunderstanding, or inadvertence.'" (quoting *Att'y Grievance Comm'n v. Siskind*, 930 A.2d 328, 344 (Md. 2007))).

## B. ER 4.4 Respect for Rights of Others

¶24        ER 4.4(a) states: "[*i*]*n representing a client, a lawyer shall not* use means that have no substantial purpose other than to embarrass, delay, or burden any other person, or *use methods of obtaining evidence that violate the legal rights of such a person.*" (Emphasis added.)

¶25        The State Bar argues that by obtaining the sworn affidavit from Haynes without her attorney's knowledge or consent, Respondent interfered with the representation of Haynes by her attorney and made an unwarranted intrusion into the privileged lawyer-client relationship.

¶26        The panel concluded that the State Bar did not prove that Respondent violated ER 4.4(a) because "[t]he rule against communicating with represented parties is fundamentally concerned with the *duties* of attorneys, not with the *rights* of parties." *United States v. Lopez*, 4 F.3d 1455, 1462 (9th Cir. 1993). The panel also concluded that "[i]f there were evidence that [Respondent] invaded the attorney-client privilege existing between Ms. Haynes and her lawyer, the hearing panel might well reach a different conclusion."

¶27        Respondent argues that the panel is correct because the focus of ER 4.4(a) is on a lawyers' duties to the legal system, not the rights of parties. Respondent asserts that the American Bar Association *Standards for Imposing Lawyer Sanctions* ("ABA Standards") establishes that both ER 4.2 and ER 4.4 concern the duties that lawyers owe to the legal system. *See* ABA Standards, Theoretical Framework (referencing ERs 4.1 through 4.4 in discussing consideration of a lawyer's duties to the legal system). Respondent further argues that she did not invade the attorney-client privilege between Haynes and her attorney, and any violation of ER 4.4(a) requires a showing that the lawyer intended to violate the rights of another person and did not have some other permissible motive.

¶28        We initially consider the distinction made between an attorney's duties and the rights of parties in the context of ER 4.4(a). The panel relied on *Lopez* for the proposition that ER 4.4(a) "is fundamentally concerned with the *duties* of attorneys, not with the *rights* of parties." As noted by the State Bar, though, *Lopez* involved a violation of California's version of ER 4.2, not 4.4(a). 4 F.3d at 1457–58. Even the quoted language in the panel's decision references "the rule against communicating with

represented parties." Accordingly, the Ninth Circuit's characterization of what ER 4.2 is concerned with is inapposite to our consideration of Respondent's conduct regarding a violation of ER 4.4(a). The panel's reliance on *Lopez* is misplaced.

**¶29** Next, Respondent's argument that the State Bar needed to prove she intended to violate the rights of another person and did not have some other permissible motive misses the mark. There are two prohibitions in ER 4.4(a). The first prohibits using means in representing a client "that have no substantial purpose other than to embarrass, delay, or burden any other person." The provision of ER 4.4(a) the State Bar alleged that Respondent violated—"us[ing] methods of obtaining evidence that violate the legal rights of . . . a person"—does not consider a lawyer's purpose in using a particular method, nor does it have an intentional mens rea requirement.

**¶30** Lastly, we address the panel's consideration of whether Respondent "invaded the attorney-client privilege existing between Ms. Haynes and her lawyer," which Respondent denies, to determine whether she violated ER 4.4(a). Importantly, the State Bar did not assert that Respondent's alleged violation of ER 4.4(a) was based on Haynes's "right" to the attorney-client privilege. Instead, the State Bar asserted that Respondent's conduct interfered with the privileged lawyer-client relationship between Haynes and her attorney, thereby violating her rights. As Comment 1 to ER 4.4 notes:

> Responsibility to a client requires a lawyer to subordinate the interests of others to those of the client, but that responsibility does not imply that a lawyer may disregard the rights of others. It is impracticable to catalogue all such rights, but they include legal restrictions on methods of obtaining evidence from others and *unwarranted intrusions into privileged relationships, such as the client-lawyer relationship*.

(Emphasis added.) Thus, although gaining access to attorney-client privileged communications may be evidence of an intrusion into the attorney-client relationship, it is the *right* to the attorney-client relationship itself that is the paramount concern. *See Clements v. Bernini*, 249 Ariz. 434, 439 ¶ 7 (2020) ("The attorney-client privilege arises from . . . a criminal defendant's right to the assistance of counsel under the Sixth Amendment

to the United States Constitution and article 2, section 24 of the Arizona Constitution."). Accordingly, the lack of evidence that Respondent gained information from Haynes that is covered by the attorney-client privilege is not dispositive in determining whether she violated ER 4.4(a) in this matter. Instead, we consider whether Respondent violated Haynes's legal rights with respect to her relationship with her attorney.

¶31 During the disciplinary hearing, Haynes's attorney testified about the effect the affidavit had on Haynes's case:

> At the time there had been some communications between me and the prosecuting attorney about a potential free talk and what's called a testimonial agreement where my client would potentially benefit from a plea agreement, but it would be— pretty much require a testimony, you know, at a trial. You know, she would agree to testify against Mr. Williams, and this affidavit put—pretty much put a halt to that.

In response to a question regarding whether a formal plea offer had been made, Haynes's attorney noted further problems due to the affidavit:

> We've never received a formal plea offer. It was never written. It was something that was discussed, but this would—an affidavit such as this would put—make it problematic, because if we did enter into a testimonial agreement at trial, this is something that she could be, obviously, cross-examined on and would hurt her testimony. So I think it put the brakes on it, because the State at that point in time would not be willing to negotiate anymore on a testimonial.

¶32 Later in the disciplinary hearing, the prosecutor's testimony also addressed the impact of the affidavit:

> I believe that if—if Ms. Haynes were to testify, which based on this affidavit potentially she may testify either on behalf of Mr. Williams, or if she changed her mind down the road and testified on behalf of the State, this could certainly contradict her testimony and could potentially be used as impeachment. And so this kind of put a damper on potential for testimonial agreements for Ms. Haynes until we could figure out what to

do with the affidavit.

**¶33** Respondent's method in securing the affidavit prevented Haynes's attorney from advising Haynes regarding its contents or likely effects on her case. Consequently, Haynes was deprived of her right to make a fully informed decision with the assistance of counsel about whether the affidavit served her best interests in the criminal case against her. Accordingly, there is clear and convincing evidence that by securing an affidavit from Haynes, Respondent used a method of obtaining evidence that violated the legal rights of another person, thereby violating ER 4.4(a).

### C. 8.4(c) Misconduct

**¶34** "It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation." ER 8.4(c).

**¶35** The State Bar asserted the same grounds for alleging Respondent violated ER 8.4(c) as it did for alleging she violated ER 4.1(a): (1) writing "attorney" on the jail form regarding Respondent's relationship to Haynes; and (2) informing Haynes about the effect the affidavit would have on her case. *See* Part II.A ¶¶ 20–23. Correspondingly, the panel concluded that, for the same reasons as it did with ER 4.1(a), the State Bar did not prove by clear and convincing evidence that Respondent had violated ER 8.4(c). We concur in the panel's conclusion regarding the affidavit but conclude differently with respect to the jail form.

**¶36** Respondent concurs in the panel's conclusion and further argues that a violation of 8.4(c) requires the State Bar to prove that she was knowingly or intentionally dishonest in her conduct. Respondent further notes that she testified in response to direct questions from the presiding disciplinary judge that she wrote "attorney" on the jail form where it said "relationship to inmate" because that was the most truthful way to complete the form. And, like the many other times that Respondent visited clients in Maricopa County jails, no one at the jail that day asked Respondent if she was Haynes's attorney.

**¶37** As discussed above, Respondent knew she was not Haynes's attorney when she filled out the jail form stating that her "relationship to" Haynes was "attorney" and presented her State Bar card to gain access to

Haynes. These facts prove that Respondent misrepresented her relationship with Haynes to the staff at Estrella Jail to gain access to Haynes. It is irrelevant that jail staff did not directly ask Respondent if she was Haynes's attorney following her affirmative misrepresentation. Although Respondent may have answered truthfully *if* she had been asked if she was Haynes's attorney, an attorney's obligation to conform her conduct with the ethical rules, including refraining from conduct involving dishonesty or misrepresentation, is not contingent on a third party's degree of vigilance in confirming the veracity of an attorney's representation. *See generally Iowa Supreme Ct. Att'y Disciplinary Bd. v. Aeilts*, 974 N.W.2d 119, 126 (Iowa 2022) (stating that "[a]n attorney's casual, reckless disregard for the truth also establishes sufficient scienter to support a violation of the rule") (citations omitted) (internal quotation marks omitted); *In re Conduct of Kumley*, 75 P.3d 432, 433 (Or. 2003) (reprimanding a respondent who ran for elective office and described himself as an "attorney" after he had transferred to inactive membership status, which provided that he could not practice law or hold himself out as an attorney in the State of Oregon). Crediting Respondent's defense to this allegation would vitiate the very purpose and effectiveness of ER 8.4(c). We conclude that there is clear and convincing evidence that Respondent violated ER 8.4(c) with respect to the jail form.

## III. Presumptive Sanction

¶38 The State Bar argues that a reprimand with two years of probation was not the appropriate sanction. Instead, Respondent should face a long, multi-year suspension. Respondent argues that the reprimand and probation imposed by the panel is the correct sanction.

¶39 The imposed sanction is a question of law that we review de novo, and we determine the appropriate disciplinary sanctions in conjunction with the ABA Standards. *In re Alexander*, 232 Ariz. at 13 ¶¶ 48–49. "Standard 3.0 lists four factors for courts to examine in deciding an appropriate sanction: '(a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors.'" *Id.* ¶ 49.

### A. Duty

¶40 We concur with the panel's conclusions that Respondent violated her duty to the legal system by violating ERs 4.2 and 8.4(d).

Respondent also violated her duty to the legal system by violating ERs 4.1(a) and 4.4(a), and her duty to the public by violating ER 8.4(c). Accordingly, ABA Standards 5.1 (failure to maintain personal integrity) and 6.3 (improper communications with individuals in the legal system) are applicable. Due to Respondent's prior discipline, Standard 8.0 (prior discipline orders) is applicable, too.

### B. Mental State

**¶41** The State Bar argues that Respondent's conduct was knowing, if not intentional, with respect to the allegations of misconduct. Respondent argues that from the beginning of the matter, she was neither intentionally dishonest nor did she intentionally or knowingly violate any rules.

**¶42** Respondent's mental state when she violated her duties to the legal system and the public determines, in part, the presumptive sanction. *See In re Phillips*, 226 Ariz. 112, 117–18 ¶ 31 (2010). The ABA Standards "recommend more severe sanctions for intentional or knowing misconduct than negligent misconduct, which threatens less harm." *In re Alexander*, 232 Ariz. at 13–14 ¶ 52. A respondent's state of mind presents questions of fact, which are subject to a clearly erroneous standard. *In re Non-Member of State Bar of Ariz., Van Dox*, 214 Ariz. 300, 304 ¶ 14 (2007). "To be clearly erroneous, a finding must be unsupported by any reasonable evidence." *Id.* ¶ 15.

**¶43** We begin by addressing the parties' arguments and panel's findings with respect to Respondent's violations of ERs 4.2 and 8.4(d).

**¶44** The State Bar argues that evidence in the record, including Respondent's experience in the practice of law and her own actions, established that her conduct in communicating with Haynes was knowing. Respondent argues that the evidence clearly established that she did not know at the time of her conduct that she was doing something wrong. She only learned after the September 13 hearing before the trial court, and after consulting with ethics counsel, that she had violated ER 4.2. Although the panel concluded that the State Bar proved, and Respondent admitted, that she violated ER 4.2, the panel concluded that Respondent acted negligently. Respondent emphasizes that the panel found the State Bar failed to prove a *knowing* violation of the rule.

¶45        The panel did not set forth any analysis or refer to specific evidence in support of this finding.  Instead, the panel merely quoted the ABA Standards' definition of "knowledge" and the following language from *Van Dox*: "merely knowing one performs particular actions is not the same as consciously intending by those actions to engage in unethical conduct.  The actor must also know the nature and circumstances of those actions . . . ." 214 Ariz. at 305 ¶ 21.  But the panel's reliance on this language from *Van Dox* is problematic because of the peculiar facts and circumstances that render *Van Dox*'s rationale inapplicable to this case.

¶46        *Van Dox* appeared in a private mediation on behalf of the sellers in a real estate transaction.  214 Ariz. at 302 ¶ 3.  She informed them, though, that if the matter did not settle, she could not represent them because she was not licensed to practice law in Arizona.  *Id.*  She believed that she could still appear in the mediation because it was private, not court ordered, and, in Florida where she was licensed, certified mediators do not have to be attorneys.  *Id.* at 304 ¶ 17.  The mediator became aware that Van Dox was not an attorney licensed in Arizona.  *Id.* at 302 ¶ 4.  After consulting with an attorney and conducting further research, the mediator concluded that Van Dox could ethically participate.  *Id.* ¶ 5.  Afterwards, Van Dox discussed the issue with a retired superior court commissioner who advised her that she could rely on the mediator's conclusion.  *Id.* ¶ 6.

¶47        Based on her appearance in the mediation, the State Bar later filed a formal complaint charging Van Dox with violating several ERs, including ER 5.5, which prohibits the unauthorized practice of law.  *Id.* ¶ 7.  The matter ultimately came before this Court to, among other issues, "clarify the . . . definition of 'knowledge,' as that term is used in the [ABA Standards]."  *Id.* ¶ 1.

¶48        The State Bar argued that Van Dox's conduct was a knowing violation because she "knew that she provided a retainer agreement from her Florida practice and that she signed in as an attorney representing the sellers at the mediation."  *Id.* at 305 ¶ 20.  Thus, according to the State Bar, Van Dox "was aware that she performed actions, and the actions in fact constituted the unauthorized practice of law; she need not have been aware when she acted that she was engaging in the unauthorized practice of law."  *Id.*  This Court rejected the State Bar's argument and agreed with the hearing officer's conclusion that Van Dox acted negligently in violating ER 5.5 because she had an honest but erroneous belief that her actions did not

14

constitute the unauthorized practice of law. *Id.* ¶¶ 22–23. It was in this context that the Court stated: "The actor must also know the nature and circumstances of those actions; that is, a respondent knowingly engages in the unauthorized practice of law only if she is aware that her conduct constitutes the unauthorized practice of law." *Id.* ¶ 21.

¶49 To be clear, the lawyer in *Van Dox* was unaware that appearing on behalf of a party in a private mediation constituted the practice of law. Because she was unaware that she had engaged in the practice of law under the circumstances, she was therefore unaware that she had engaged in the *unauthorized* practice of law. In other words, the lawyer was mistaken about what constituted the practice of law in Arizona in the context of a private mediation—as were the mediator and a former judicial officer. Nevertheless, the lawyer did not argue that she was unaware that the unauthorized practice of law was prohibited. Unfortunately, this distinction is not expressly addressed in *Van Dox*. Indeed, the Court's rationale has led one legal scholar to note:

> The opinion in *Van Dox* is confusing, however, because the court did not explicitly rely on reasonable mistake of law; instead, it found that the respondent acted negligently rather than knowingly because she did not have a "conscious awareness of the nature or attendant circumstances of the conduct" in that she was unaware that her conduct constituted the unauthorized practice of law. 152 P.3d at 1188 (citing the ABA *Standards for Imposing Disciplinary Sanctions*).

Nancy J. Moore, *Mens Rea Standards in Lawyer Disciplinary Codes*, 23 Geo. J. Legal Ethics 1, 52 n.310 (2010). Additionally, our sister court in Kansas has rejected an effort by a respondent to rely on *Van Dox* "for the proposition that an attorney must be aware that the conduct violates the rules for the conduct to be 'knowingly.'" *See In re Hodge*, 407 P.3d 613, 658 (Kan. 2017) (rejecting attorney's citation to *Van Dox*, 214 Ariz. at 305, and *In re White-Steiner*, 219 Ariz. 323, 326 (2009), and stating that "Kansas courts follow the ABA Standards' definition of the term 'knowingly'"). Accordingly, we clarify that Arizona follows the ABA Standards' definition of "knowingly," which "is the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." The attorney does not have to know that the act violates an ethical rule.

¶50        In contrast to the situation in *Van Dox*, Respondent was aware of the nature and attendant circumstances of her conduct constituting a violation of ER 4.2. Respondent knew Haynes was a co-defendant in the same case as her client, that she was not Haynes's attorney, and that she never had consent to communicate with Haynes. Indeed, Respondent attempted to contact Haynes's attorney by email and phone about the affidavit before contacting Haynes directly. The panel's finding that Respondent acted negligently is clearly erroneous, and we conclude that her conduct was knowing. For the same reasons, we find that the panel erred in concluding that Respondent acted negligently in violating 8.4(d) and likewise find her conduct was done knowingly. We now turn to Respondent's misconduct regarding ERs 4.1(a), 4.4(a), and 8.4(c).

¶51        As discussed above, Respondent was aware that Haynes was represented by counsel at all pertinent times. By stating she was Haynes's attorney, she was able to have an in-person, unmonitored visit, which furthered Respondent's goal of securing an affidavit on behalf of her client. Respondent knowingly failed to advise Haynes's attorney of any of the communications she had with Haynes, either on the phone, in person, or by way of email or mail, and excluded Haynes's attorney from correspondence with the prosecutor that included the affidavit Haynes signed. Consequently, Respondent knowingly violated her duties to the legal system and the public.

### C. Actual or Potential Injury

¶52        The panel concluded that Respondent's unauthorized communications with Haynes caused actual and potential harm. We concur in the panel's conclusions and find that similar injury resulted from Respondent's actions in misrepresenting her relationship as Haynes's attorney and securing the signed affidavit from Haynes and submitting it to the prosecutor.

### D. Applicable ABA Standards

¶53        Given that Respondent engaged in knowing conduct, ABA Standards 5.13 (providing that a "[r]eprimand is generally appropriate when a lawyer knowingly engages in any other conduct that involves dishonesty . . . or misrepresentation and that adversely reflects on the lawyer's fitness to practice law"), 6.32 (providing that a "[s]uspension is

16

generally appropriate when a lawyer engages in communication with an individual in the legal system when the lawyer knows that such communication is improper, and causes injury or potential injury to a party"), and 8.2 (providing that a "[s]uspension is generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further similar acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession") are relevant to determining the appropriate sanction. However, "[t]he standards do not account for multiple charges of misconduct." ABA Standards, Theoretical Framework. The ABA Standards suggest that "[t]he ultimate sanction imposed should at least be consistent with the sanction for the most serious instance of misconduct among a number of violations; it might well be and generally should be greater than the sanction for the most serious misconduct." *Id.; see also In re Moak*, 205 Ariz. 351, 353 ¶ 9 (2003) ("When an attorney faces discipline for multiple charges of misconduct, the most serious charge serves as the baseline for the punishment."). Nonetheless, "the standards are not designed to propose a specific sanction for each of the myriad of fact patterns in cases of lawyer misconduct." *Id.* Prior to determining the sanction to impose, we consider all relevant aggravating and mitigating factors. *See* ABA Standard 9.1.

## IV. Aggravating and Mitigating Factors

¶54 We agree with the panel's findings regarding aggravating factors and further observe that, with respect to 9.22(a), Respondent's prior disciplinary offense did not involve the actual practice of law or representation of clients and occurred approximately two decades ago. We also concur in the panel's finding of mitigating factors.

## V. Appropriate Sanction

¶55 "The purpose of lawyer discipline is not to punish the lawyer but to protect the public, the legal profession, and the justice system." *In re Martinez*, 248 Ariz. at 468 ¶ 40. "Lawyer discipline also 'deter[s] the [disciplined] attorney and others from engaging in the same or similar misconduct.'" *Id. (*quoting *In re Alexander*, 232 Ariz. at 15 ¶ 63) (alterations in original).

¶56 After having considered the aggravating and mitigating factors involved and the relative weight to give to each, we conclude that a

suspension is appropriate. Although the presumptive length of a suspension is six months, ABA Standard 2.3, we take into account this Court's observation in *In re Davis* "that, as a solo practitioner, any suspension will be devastating to her practice...[and] a six-month suspension would be tantamount to disbarment." 181 Ariz. 263, 266 (1995) (alterations in original) (citation omitted) (internal quotation marks omitted). Additionally, we do not believe that under these particular circumstances a lengthy suspension is necessary to deter Respondent or other attorneys from engaging in the same or similar misconduct. Therefore, we impose a suspension of 120 days.

## CONCLUSION

**¶57** Respondent knowingly committed misconduct in violating ERs 4.1(a), 4.2, 4.4(a), 8.4(c), and 8.4(d). For the foregoing reasons, we suspend Respondent from the practice of law for 120 days and place her on probation for two years with the terms and conditions imposed by the panel. Respondent shall pay the costs and expenses of these proceedings, including costs incurred by the State Bar and the Office of the Presiding Disciplinary Judge.